**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| _____ | ) |
| A.E.S.E., a minor child, and Eusebio Daniel | ) |
| Sabillon Paz, her father, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Case No. 2:21-cv-00569-RB-GBW |
| | ) |
| United States of America and Management & | ) |
| Training Corporation, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO TRANSFER, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL DISMISSAL**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 3

I.      Plaintiffs' Forcible Separation After Entering the United States…..................... 3

II.     Mr. Sabillon Paz's Detention in Federal and MTC Facilities............................... 4

III.    A.E.S.E.'s Detention and Sexual Assault in Federal Custody............................... 5

IV.     Plaintiffs Are Released from Government Custody and Granted Asylum ........................ 5

ARGUMENT ................................................................................................................... 6

I.      The Court Should Deny the Government's Request to Transfer ........................................ 6

        A.      Applicable Legal Standard........................................................................ 6

        B.      The Government Has Not Established That Texas Courts Would Have Personal
                Jurisdiction Over Co-Defendant MTC................................................ 6

        C.      A Balancing of the Applicable Factors Does Not Weigh in Favor of Transfer,
                Much Less "Strongly" So ........................................................ 8

II.     The Court Should Deny the Government's Motion for Partial Dismissal for Lack of
        Subject Matter Jurisdiction ............................................................... 14

        A.      Applicable Law and Legal Standard........................................................ 14

        B.      The Government's Motion Mischaracterizes the Complaint............................... 15

        C.      The Discretionary Function Exception Does Not Apply ..................................... 17

                1.      The *Flores* consent decree and DHS rules and standards specifically
                        proscribe the Government's conduct. ...................................... 18

                2.      The Constitution prohibits the Government's conduct............................ 19

                3.      Plaintiffs are not required to show their constitutional right to family
                        integrity was clearly established. ............................................ 23

                4.      The Government's actions were not grounded in considerations of public
                        policy......................................................................... 25

5.      Claims concerning conditions of confinement are not categorically barred by the DFE. ......................................................................................... 29

D.      The Due Care Exception Does Not Shield the Government from Liability for Plaintiffs' Claims ...................................................................................... 30

1.      No statute or regulation mandated the DHS agents' cruel treatment and separation of plaintiffs. ............................................................ 31

2.      In any case, DHS agents did not exercise "due care." .............................. 32

E.      Plaintiffs' Claims Satisfy the FTCA's Private Analogue Requirement ................ 33

CONCLUSION ........................................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.P.F. v. United States*,
492 F. Supp. 3d 989 (D. Ariz. 2020) ........................................................................17, 22, 31

*Ajaj v. United States*,
No. 03CV01959MSKPAC, 2006 WL 1305198 (D. Colo. May 11, 2006)............................30

*Berkovitz v. United States*,
486 U.S. 531 (1988)........................................................................................................ passim

*Bhuiyan v. United States*,
772 F. App'x 564 (9th Cir. 2019) .......................................................................................35

*Boyd v. United States*,
881 F.2d 895 (10th Cir. 1989) ...........................................................................................26

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .............................................................................................15

*Bristol-Myers Squibb Co. v. Superior Ct.*,
137 S. Ct. 1773 (2017)........................................................................................................8

*C.M. v. United States*,
No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020),
*appeal denied*, 2020 WL 5232560 (D. Ariz. July 6, 2020) ............................................ passim

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) .......................................................................................6, 7

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998).........................................................................................................21

*Coffey v. United States*,
906 F. Supp. 2d 1114 (D.N.M. 2012) ............................................................................30, 33

*D.J.C.V. v. U.S. Immigr. & Customs Enf't*,
No. 18 Civ. 9115 (AKH), 2018 WL 10436675 (S.D.N.Y. Oct. 15, 2018) ............................27

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).........................................................................................................7

iii

*de Nolasco v. U.S. Immigr. & Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018) ...................................................................22

*Duke v. Dep't of Agric.*,
   131 F.3d 1407 (10th Cir. 1997) ........................................................................26

*Eberle v. Adams*,
   73 S.W.3d 322 (Tex. App. 2001) .......................................................................34

*Elgamal v. Bernacke*,
   714 F. App'x 741 (9th Cir. 2018) ......................................................................35

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010) ................................................................. passim

*Flores v. Blinken*,
   No. 1:21-CV-00066, 2021 WL 6037593 (S.D. Tex. Oct. 20, 2021) ............................ passim

*Flores v. Rosen*,
   984 F.3d 720 (9th Cir. 2020) ...........................................................................19

*Franklin Sav. Corp. v. United States*,
   180 F.3d 1124 (10th Cir. 1999) ..................................................................14, 27

*Gallegos v. United States*,
   No. CV 08-0014 RB/LFG, 2009 WL 10664932 (D.N.M. Feb. 26, 2009)........................18

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ...........................................................................25

*Garcia v. United States*,
   709 F. Supp. 2d 1133 (D.N.M. 2010) ...............................................................17

*Garcia-Feliciano v. United States*,
   No. CIV. 12-1959 (SCC), 2014 WL 1653143 (D.P.R. Apr. 23, 2014) ........................31

*Gonzalez v. United States*,
   No. CV-12-01912 DMG (DTBx), 2013 WL 942363 (C.D. Cal. Mar. 11, 2013)................31

*Gregoire v. Biddle*,
   177 F.2d 579 (2d Cir. 1949)............................................................................24

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)......................................................................................24

iv

*Hatahley v. United States*,
351 U.S. 173 (1956)...................................................................................................32, 33

*Hem v. Toyota Motor Corp.*,
No. 09CV888 MCA/RLP, 2010 WL 11483952 (D.N.M. Apr. 19, 2010) ..............................14

*Hoffman v. Blaski*,
363 U.S. 335 (1960)..............................................................................................................6

*Hydrogen Tech. Corp. v. United States*,
831 F.2d 1155 (1st Cir. 1987).............................................................................................32

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
668 F.3d 281 (5th Cir. 2012) ..............................................................................................35

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955)...................................................................................................26, 30, 35

*J.S.R. ex rel. J.S.G. v. Sessions*,
330 F. Supp. 3d 731 (D. Conn. 2018).................................................................................22

*Keller v. United States*,
771 F.3d 1021 (7th Cir. 2014) ............................................................................................29

*Kikumura v. Osagie*,
461 F.3d 1269 (10th Cir. 2006) ..........................................................................................35

*L. v. U.S. Immigr. & Customs Enf't*,
302 F. Supp. 3d 1149 (S.D. Cal. 2018)..............................................................21, 22, 25, 27

*L. v. U.S. Immigr. & Customs Enf't*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal.
2019) ...................................................................................................................................22

*Levin v. United States*,
568 U.S. 503 (2013)............................................................................................................24

*Limone v. United States*,
579 F.3d 79 (1st Cir. 2009).................................................................................................20

*Linder v. United States*,
937 F.3d 1087 (7th Cir. 2019), *cert. denied*, 141 S. Ct. 159 (2020)....................................20

*Lopez v. United States*,
376 F.3d 1055 (10th Cir. 2004) ..........................................................................................18

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016) ...................................................................19, 23, 24, 25

*Lucero v. United States*,
  No. CIV 00-357 MCA/LFG (ACE), 2002 WL 35650045 (D.N.M. Mar. 25,
  2002) ...................................................................................................................29

*Margheim v. Buljko*,
  855 F.3d 1077 (10th Cir. 2017) .........................................................................16

*Marlys Bear Med. v. United States*,
  241 F.3d 1208 (9th Cir. 2001) ...........................................................................28

*Martinez v. United States*,
  822 F. App'x 671 (10th Cir. 2020) .....................................................................19

*Medina v. United States*,
  259 F.3d 220 (4th Cir. 2001) .............................................................................20

*Miller v. Paschall Truck Lines, Inc.*,
  No. CV 20-303 GBW/SCY, 2020 WL 4192497 (D.N.M. July 21, 2020)..............14

*Moore v. Valder*,
  65 F.3d 189 (D.C. Cir. 1995), *abrogated on other grounds by Ziglar v.
  Abbasi*, 137 S. Ct. 1843 (2017).........................................................................27

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
  527 F.2d 1252 (2d Cir. 1975)............................................................................20

*Nunez Euceda v. United States*,
  No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021)..........17, 22, 31

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) .............................................................................20

*Owen v. City of Independence*,
  445 U.S. 622 (1980).........................................................................................19

*Peña Arita v. United States*,
  470 F. Supp. 3d 663 (S.D. Tex. 2020) ...............................................................23

*Powell v. United States*,
  233 F.2d 851 (10th Cir. 1956) ...........................................................................32

*Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC*,
  333 F. Supp. 3d 1179 (D.N.M. 2018) ..............................................................7, 8

*Raz v. United States*,
    343 F.3d 945 (8th Cir. 2003) ........................................................................20

*Rosenbaum v. Washoe Cnty.*,
    663 F.3d 1071 (9th Cir. 2011) ...............................................................21, 25

*Ruiz v. United States*,
    No. 13-cv-1241 KAM SMG, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ..................19, 29

*Sanchez v. Hartley*,
    810 F.3d 750 (10th Cir. 2016) .....................................................................15

*Sandoval v. Cnty. of San Diego*,
    985 F.3d 657 (9th Cir.), *cert. denied*, 142 S. Ct. 711 (2021)....................................24

*Shivers v. United States*,
    1 F.4th 924 (11th Cir. 2021), *cert. filed*, No. 21-682 (U.S. Nov. 5, 2021) ............................20

*Silcott v. Oglesby*,
    721 S.W.2d 290 (Tex. 1986)........................................................................34

*Skeet v. United States*,
    No. 10-0107 RB/WDS, 2012 WL 12884686 (D.N.M. Jan. 25, 2012) ....................................27

*Stephens v. Alliant Techsystems Corp.*,
    714 F. App'x 841 (10th Cir. 2017) .................................................................11

*Sutton v. United States*,
    819 F.2d 1289 (5th Cir. 1987) .....................................................................20

*Triestman v. Fed. Bureau of Prisons*,
    470 F.3d 471 (2d Cir. 2006).........................................................................29

*Twyman v. Twyman*,
    855 S.W.2d 619 (Tex. 1993)........................................................................34

*U.S. Fid. & Guar. Co. v. United States*,
    837 F.2d 116 (3d Cir. 1988)........................................................................20

*United States v. Gaubert*,
    499 U.S. 315 (1991)........................................................................17, 25, 26

*United States v. Muniz*,
    374 U.S. 150 (1963)..........................................................................34, 35

vii

*United States v. Olson*,
    546 U.S. 43 (2005) ....................................................................................................35

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ..................................................................................................13

*Villafuerte v. United States*,
    No. 7:16-cv-619, 2017 WL 8793751 (S.D. Tex. Oct. 11, 2017) ...........................19

*Watson v. United States*,
    179 F. Supp. 3d 251 (E.D.N.Y. 2016), *aff'd in part, rev'd in part on other
    grounds*, 865 F.3d 123 (2d Cir. 2017) ...................................................................32

*Weathers v. Circle K Stores, Inc.*,
    No. 1:19-CV-00669-JCH-LF, 2020 WL 1236573 (D.N.M. Mar. 13, 2020) ...........7

*Welch v. United States*,
    409 F.3d 646 (4th Cir. 2005) .........................................................................30, 31, 32

*Williams v. Hansen*,
    5 F.4th 1129 (10th Cir. 2021) ..................................................................................15

*Woods v. United States*,
    No. 2:16-CV-1041-JCH/SMV, 2017 WL 4736722 (D.N.M. Oct. 19, 2017) ...........10, 11

**STATUTES**

8 U.S.C. § 1232 ..............................................................................................................32

8 U.S.C. § 1325 ................................................................................................................4

18 U.S.C. § 4042 ............................................................................................................30

28 U.S.C. § 1346, Federal Tort Claims Act.......................................................... passim

28 U.S.C. § 1404 ....................................................................................................1, 2, 6, 7

28 U.S.C. § 2679 ........................................................................................................24, 25

28 U.S.C. § 2680 ..............................................................................................14, 20, 30, 31

**OTHER AUTHORITIES**

*About Us*, MGMT. & TRAINING CORP., https://www.mtctrains.com/about-us/ (last
    visited Mar. 13, 2022) ................................................................................................7

ADMIN. OFF. OF U.S. CTS., FEDERAL COURT MANAGEMENT STATISTICS (2021),
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparis
    on1231.2021.pdf .......................................................................................................13

RESTATEMENT (SECOND) OF TORTS § 314A (1965) ......................................................33

## INTRODUCTION

Plaintiffs submit the following response in opposition to Defendant United States of America's Motion to Transfer, or in the Alternative, Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (the "Motion" or "Mot."), ECF No. 31. The Court should deny the Motion in its entirety.

Plaintiffs Eusebio Daniel Sabillon Paz and his daughter A.E.S.E. came to the United States to seek asylum from political violence in Honduras. Instead of finding refuge, however, upon entering the United States Plaintiffs were subjected to a campaign of abuse and mistreatment so extreme that it could fairly be called torture. It is because of the enduring effects of these horrific experiences that Plaintiffs bring this action against Defendants United States of America (the "Government") and Management & Training Corporation ("MTC"), asserting that the Government is liable under the Federal Tort Claims Act (the "FTCA") and that both Defendants are liable to Plaintiffs for multiple common law torts. In seeking to transfer this case, or alternatively to dismiss the Complaint, the Government ignores or misstates the relevant legal standards and mischaracterizes Plaintiffs' claims. The Government's arguments are without merit.

The Government seeks to transfer this case from the District of New Mexico (the district in which Mr. Sabillon Paz was detained and horribly mistreated at an MTC facility located in Chaparral) to the Western District of Texas (a district with no advantages given its negligible distance from the District of New Mexico). Specifically, the Government moves under 28 U.S.C. § 1404(a), which permits a transfer under certain conditions for "the convenience of parties and witnesses." Transfer under this statute should be denied because (1) the Government has failed to prove that this action could have been brought in the Western District of Texas, as it has not shown MTC would be subject to personal jurisdiction in Texas; and (2) the Government has failed to

prove, as it must, that the balance of the Tenth Circuit's convenience factors "strongly favors" a transfer. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (discussing standard for analyzing transfer motions pursuant to 28 U.S.C. § 1404(a)).

The Government also seeks, in the alternative, a partial dismissal of this case due to lack of subject matter jurisdiction under various exceptions to the FTCA, but each of the Government's stated arguments for dismissal of Plaintiffs' claims is without merit.[1] First, the "discretionary function exception" ("DFE") does not apply for two independent reasons: (i) the Government officials involved lacked the discretion to violate mandatory agency guidelines, standards, and policies—much less the constitutional right to family integrity—when they separated and detained Plaintiffs in the manner they did; and (ii) the tortious conduct at issue here was not based on public policy considerations.

Second, the due care exception ("DCE") offers no shield to liability because no statute or regulation mandated the separation of Plaintiffs here, and, moreover, the Government utterly failed to exercise due care in subjecting Plaintiffs to ridicule, threats, prolonged separation, and physical and sexual violence. Third, the Government's argument that there is no private analogue here because the federal government alone has authority to enforce federal criminal and immigration laws misstates the issue. Plaintiffs do not argue that the Government lacks detention or prosecutorial authority, but rather, that Government officials engaged in tortious conduct by forcibly separating Plaintiffs in a manner designed to inflict emotional distress and suffering.

---

[1] To the Government's credit it does not attempt to argue — nor could it — that Plaintiffs' claims of Assault and Battery, Abuse of Process, Breach of Fiduciary Duty, Conversion, and Medical Negligence should be dismissed. *See* Mot. 2 n1.

Subject matter jurisdiction exists under the FTCA because private individuals are liable for such conduct under "like circumstances" according to Texas tort law.

Plaintiffs' allegations—which must be taken as true at this stage of litigation—establish that Government officials forcibly took A.E.S.E. from her father and engaged in other inhumane conduct in a deliberate attempt to inflict distress and suffering so severe that Plaintiffs and future asylum seekers would abandon the hope of seeking asylum in the United States. The FTCA creates liability for the Government's conduct, and the Court should deny the Motion to Dismiss.

## FACTUAL BACKGROUND

### I.       Plaintiffs' Forcible Separation After Entering the United States

On or about May 29, 2018, Plaintiffs crossed into the United States from Mexico between ports of entry and waited to be apprehended by U.S. Customs and Border Patrol ("CBP") agents. Compl. ¶¶ 28-29, ECF No. 1. Mr. Sabillon Paz voluntarily surrendered himself and A.E.S.E. when CBP agents appeared; however, the agents aggressively grabbed Mr. Sabillon Paz, threw him against the scalding hood of their vehicle, and handcuffed him. *Id.* ¶ 30. Plaintiffs heard one of the agents say that Mr. Sabillon Paz would regret his decision to enter the United States because he would lose his daughter, which caused them both, and particularly A.E.S.E., to become extremely upset. *Id.* ¶¶ 31-32.

Plaintiffs believe the agents then transported them to the Paso Del Norte Processing Center. *Id.* ¶ 33. At this holding center, commonly referred to by asylum seekers as the "*hielera*" (an "icebox," in Spanish) because of the freezing cold temperatures, Plaintiffs were unable to bathe, brush their teeth, or use hand soap. *Id.* ¶¶ 34, 37. DHS agents insulted A.E.S.E. and her father, calling them "garbage" and taunting them with the prospect of forced separation. *Id.* ¶ 41.

After a few days in the *hielera*, on or about May 31, 2018, Plaintiffs were taken out of their cell and lined up with the other families at the holding facility. *Id.* ¶ 42. Government officers then began forcibly separating parents and children, including Mr. Sabillon Paz and A.E.S.E. *Id.* ¶¶ 42-43. Despite the parents' questions, officers did not explain where the children were being taken, how and when the families would be reunited, or how the parents could contact their children. *Id.* This separation and the subsequent detention Plaintiffs experienced was the result of the Government's "zero-tolerance" family separation policy, which was meant to deter other migrants from entering the United States to seek asylum. *Id.* ¶¶ 20, 23-26, 45.

## II.    Mr. Sabillon Paz's Detention in Federal and MTC Facilities

After the separation, Mr. Sabillon Paz was transferred to a federal prison in West Texas and charged under 8 U.S.C. § 1325(a)(1) with the misdemeanor of improper entry by a noncitizen. *Id.* ¶¶ 46-47. He was detained at this prison for approximately three weeks, until all charges against him were voluntarily dismissed. *Id.* ¶¶ 46, 48. During his time at this facility, Mr. Sabillon Paz was repeatedly insulted and taunted for inquiring about his daughter and denied medical care for extremely painful kidney stones. *Id.* ¶¶ 49, 51.

On or about June 22, 2018, Mr. Sabillon Paz was transferred to the Otero County Processing Center ("Otero"), a facility in Chaparral, New Mexico. *Id.* ¶ 52. The Otero facility was operated by MTC. *Id.* ¶ 59. The transfer process was abusive, painful, and traumatic, as Government agents chained Mr. Sabillon Paz's arms, ankles, and torso, and left him for hours on a bus in the sweltering heat without air-conditioning or water. *Id.* ¶¶ 54-58. While at Otero, Government officers, aided by MTC personnel, attempted to coerce Mr. Sabillon Paz into abandoning his asylum claim through their abusive behavior. *Id.* ¶¶ 60, 65-67, 69, 71. Mr. Sabillon Paz was also denied access to adequate medical care and allowed to languish with severe

symptoms, including extreme pain and bleeding while urinating due to kidney stones, which resulted in long-term medical complications. *Id.* ¶¶ 74-78.

## III.    A.E.S.E.'s Detention and Sexual Assault in Federal Custody

After A.E.S.E.'s separation from her father, Plaintiffs believe she was taken to a CBP facility in Clint, Texas. *Id.* ¶ 79. There she was subjected to sexual abuse and witnessed the abuse of other young children. *Id.* ¶¶ 83, 85. After she was sexually assaulted by a Government officer, the officer threatened A.E.S.E. and told her that she would "never see her parents again" if she told anyone about the abuse. *Id.* ¶ 84. Thereafter, the child was transferred hundreds of miles away, to a Government contractor facility in Los Angeles, even though A.E.S.E.'s grandparents were in the United States desperate to take custody of their granddaughter and proactively seeking her release. *Id.* ¶¶ 87-88, 90. The Government's unexplained refusal to release A.E.S.E. to her grandparents prolonged the distraught child's detention by approximately six weeks. *Id.* ¶ 89.

## IV.    Plaintiffs Are Released from Government Custody and Granted Asylum

Plaintiffs were finally reunited by immigration officials in El Paso, Texas approximately 50 days after their forced separation. *Id.* ¶ 103. A.E.S.E. was in such bad health that she was hospitalized immediately after she and her father were released from custody. *Id.* ¶ 104. Although the Government has since repudiated the "zero-tolerance" family separation policy, calling it a "human tragedy," Mot. 11-12 (citation omitted), and Plaintiffs have since been granted asylum by an immigration judge, Plaintiffs continue to feel the effects of this policy and the accompanying abuse they endured as a result of its implementation, Compl. ¶¶ 106-111, 113. Plaintiffs continue to suffer physical ailments because of the medical neglect and abuse they experienced while in detention, and they remain extremely traumatized by their needless and purposefully cruel separation. *Id.* ¶¶ 106-111.

5

## ARGUMENT

### I.      The Court Should Deny the Government's Request to Transfer

#### A.      Applicable Legal Standard

Pursuant to 28 U.S.C. § 1404(a), courts permit transfer of a case to any other district where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." A court's analysis of a motion to transfer brought under 28 U.S.C. § 1404(a) is twofold. First, the movant must establish that the transferee court is a place where the action "might have been brought." Thus, the transferee court must have personal jurisdiction over all defendants and venue must be proper. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Then, if this requirement is met, the movant "bears the burden of establishing that the existing forum is inconvenient" by demonstrating that the weight of nine different discretionary factors "strongly favors" transfer. *Emps. Mut.*, 618 F.3d at 1167 (citation omitted). "[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Id.* (alterations in original) (citation omitted).

The Government's motion fails to satisfy this standard and should be denied because: (1) the Government has not established that Texas courts have personal jurisdiction over Defendant MTC[2]; and, regardless, (2) a balancing of the various discretionary factors does not strongly favor transfer. In fact, those factors militate strongly against transfer.

#### B.      The Government Has Not Established That Texas Courts Would Have Personal Jurisdiction Over Co-Defendant MTC

---

[2] Plaintiffs do not contest that the Government would be subject to personal jurisdiction in Texas.

The Court should deny transfer because the Government has not demonstrated that Defendant MTC would be subject to personal jurisdiction—general or specific—in the Western District of Texas, as is necessary under § 1404(a).  *See Chrysler Credit*, 928 F.2d at 1515; *see also Weathers v. Circle K Stores, Inc.*, No. 1:19-CV-00669-JCH-LF, 2020 WL 1236573, at *3 (D.N.M. Mar. 13, 2020) ("[I]t was [Defendant]'s burden, as the moving party, *to prove* that the transferee district would have personal jurisdiction over each Defendant." (emphasis added)). General jurisdiction over a corporate defendant lies where the "corporation is fairly regarded as at home"— that is, its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC*, 333 F. Supp. 3d 1179, 1203 (D.N.M. 2018). MTC's place of incorporation is Delaware and its principal place of business is in Utah.  Compl. ¶ 18. While "in an exceptional case," a corporation's operations in a different forum "may be so substantial and of such a nature as to render the corporation at home" there, *Daimler*, 571 U.S. at 139 n.19, the Government's lone argument that MTC "operates several facilities and has established its regional office in [Texas]," Mot. 16, is insufficient to establish the "exceptional case" that *Daimler* contemplated. *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.")[3]; *Weathers*, 2020 WL 1236573, at *3 (holding "[Defendant]'s bare statement, without more, [was] insufficient" to carry its burden of proving personal jurisdiction as the moving party).

---

[3] In addition to Texas and New Mexico, MTC operates facilities of one kind or another in Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Massachusetts, Mississippi, Missouri, Nevada, New Jersey, New York, Ohio, Oregon, Utah and Wyoming.  *See About Us*, MGMT. & TRAINING CORP., https://www.mtctrains.com/about-us/ (last visited Mar. 13, 2022) (reflecting locations of MTC's 21 Job Corps centers, 22 correctional facilities, 13 prison and detention medical departments, 5 detention centers, and 2 workforce development sites).

The Government likewise fails to establish that the courts in the Western District of Texas would have specific jurisdiction over MTC. While MTC operates facilities and a regional office in Texas (though none in El Paso), Mot. 16, "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy'. . . . When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781 (2017) (citations omitted); *see also Presidential Hosp., LLC*, 333 F. Supp. 3d at 1202. In the present case, each allegation Plaintiffs make against MTC relates only to MTC's acts in New Mexico—specifically its operation of the Otero facility in Chaparral, New Mexico, and MTC or its agents' treatment of Mr. Sabillon Paz while he was detained at that facility. Compl. ¶¶ 18-19, 59-78. All of the acts or omissions alleged to take place in Texas are the Government's alone.[4] Without a connection between MTC's conduct and Texas *that relates to this case*, specific jurisdiction is unavailable against MTC no matter the extent of its unrelated activities in Texas.

Because the Government has not established that a court in the Western District of Texas has personal jurisdiction over both the Government *and* MTC, it has failed to meet its burden of proving the Western District of Texas is a forum where this case might have been brought. The Government's transfer request should be denied on that basis alone.

### C.   A Balancing of the Applicable Factors Does Not Weigh in Favor of Transfer, Much Less "Strongly" So

---

[4] Notably, MTC's Answer to Plaintiffs' Complaint also proclaims that New Mexico is the only relevant forum.  MTC Answer ¶ 18, ECF No. 6. ("Defendant MTC admits the allegations contained in paragraph 18 of the Complaint but denies the relevancy of any of its operations outside of the Otero County Processing Center ("OCPC").")

8

Even if the Court were to find that MTC is subject to personal jurisdiction in the Western District of Texas, the Court still should deny a transfer as the Government has not carried its burden of demonstrating that the balance of the relevant factors strongly favors transfer. For over five decades, the Tenth Circuit has required the movant to show the balance of nine discretionary factors "strongly favors" a transfer of venue. *Emps. Mut.*, 618 F.3d at 1167 n.13 (citing cases). These nine factors are: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Id.* at 1167. The Government briefly addresses the first three factors and sweepingly declares the remaining six factors "are either neutral or argue in favor of transfer." Mot. 17-18. As noted, the Government's central argument is that the majority of tortious conduct occurred in or is connected to Texas. But whether or not that is even so, the Tenth Circuit does not evaluate transfer motions under a majority of contacts test—rather, it weighs the nine discretionary factors identified above.

With respect to the first factor, while courts have recognized that a plaintiff's choice of forum receives less deference if the plaintiff resides outside of the district, the plaintiff's choice of forum is still entitled to deference, and this factor can still weigh in against transfer.[5] *See Emps.*

---

[5] While Plaintiffs lived in Texas on the date the Complaint was filed, Compl. ¶ 16, they have since relocated to Ohio.  Ex. 1 (Declaration of Eusebio Daniel Sabillon Paz in Support of Opposition to

*Mut.*, 618 F.3d at 1168. Plaintiffs' choice will only be given "little weight" where "the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id.* (citation omitted). This case undoubtedly has such a connection. Mr. Sabillon Paz was detained at MTC's Otero facility in Chaparral, New Mexico pursuant to a federal government contract. *See* Compl. ¶¶ 18, 59-78. Mr. Sabillon Paz's medical negligence claim and all his other claims against MTC arise from acts or omissions that occurred within New Mexico. Indeed, although the Government says "very few of the allegedly tortious acts or omissions occurred within this District," Mot. 17, in the very next clause of its brief the Government acknowledges the tortious activity Mr. Sabillon Paz alleges was inflicted upon him at the Otero facility.

On this point, the Court's decision in *Woods v. United States*, No. 2:16-CV-1041-JCH/SMV, 2017 WL 4736722, at *5 (D.N.M. Oct. 19, 2017) is instructive. In this medical malpractice case, the United States sought a transfer to the Western District of Texas arguing that the challenged medical treatment, and thus much of the evidence, was likely to be located in Texas. *Id.* While the Court acknowledged the likelihood that much of the evidence might be centered in Texas, the court concluded that "this alone [did] not merit transfer." *Id.* (citation omitted). The Court explained that "[t]he inquiry at this stage is not whether some other forum has a greater material relation or significant connection—*it is whether this particular forum has at least some material relation or significant connection to the facts giving rise to the lawsuit*." *Id.* (emphasis

---

Motion to Transfer, or in the Alternative, Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction).  At present, Texas is no more convenient for them than New Mexico.  Furthermore, the Government apparently seeks to move this case to the El Paso Courthouse in the Western District of Texas, Mot. at 17, which is itself in a different district than Houston, where the Plaintiffs formerly resided, Ex. 1 ¶ 3, and would have been equally as convenient to Plaintiffs as New Mexico.

added) (citation omitted). Noting that the plaintiff's subsequent medical care in New Mexico as a result of the alleged malpractice supplied that connection, the Court declined to transfer the case. *Id.* at *7 ("When, at this stage, the Court must ask whether there is some material connection between New Mexico and the underlying facts of the lawsuit, the Court is persuaded that [Plaintiff]'s medical treatment in Alamogordo—prompted by Beaumont employees' alleged negligence in Texas—supplies that connection.").

The Government emphasizes that Plaintiffs allegedly live in Texas "and most of the acts complained of occurred there," Mot. 1, but Plaintiffs no longer live in Texas (rather, they live in Ohio), and when they did live in Texas, it was in Houston (which is located in the Southern District of Texas, far from the El Paso courthouse in the Western District of Texas to which the Government seeks to transfer this case). Further, the test for transfer is not whether more "acts complained of" occurred in the District of New Mexico or the Western District of Texas. The Government cites no authority that it is.

As to the second and third factors, while the Government tries to show transfer would not inconvenience Plaintiffs, it has not shown *the Government itself or any witness* would be inconvenienced by litigating in New Mexico. The Government notes there is "little concern that the parties will be deprived of access to witnesses or sources of proof if the case is moved" to the Western District of Texas, Mot. 17, but this reverses the question. It is the Government's burden, as the movant, to "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Emps. Mut.*, 618 F.3d at 1169 (internal quotation marks and original alterations omitted); *see also Stephens v. Alliant Techsystems Corp.*, 714 F. App'x 841, 845 (10th

11

Cir. 2017) ("[Movant] argues a transfer would be more convenient for witnesses, but he neither identifies the witnesses he refers to nor explains the importance of their testimony."). The Government has done none of these things—indeed, it has failed to identify any witness other than Plaintiffs. Nor could the Government make such a showing, since the courthouses in this district and the proposed transferee district are less than 50 miles apart. The Government also asserts that "the 'cost of making necessary proof' is likely reduced if the case is litigated in El Paso instead of Albuquerque," Mot. 17, but this case was filed in Las Cruces (where this Court sits), not Albuquerque, which renders any discussion of geography and convenience irrelevant.[6] *See Emps. Mut.*, 618 F.3d at 1169 ("This argument fails to justify a transfer because the record contains no evidence concerning the potential costs of litigating the case in [the original forum].").

     Glossing over the remaining factors, the Government states the "difficulties that may arise from congested dockets . . . [is] either neutral or argue[s] in favor of transfer," Mot. 17, without offering any evidence that the proposed transferee district is any less congested than this one. In fact, available evidence of docket congestion weighs against transfer. While, as the end of 2021, the Western District of Texas had a slightly quicker median time from filing to trial than did the District of New Mexico (8.2 vs. 10.0 months), the Western District of Texas had significantly more pending cases (762 compared to 495) and weighted filings per judge (850 compared to 398).[7]

---

[6] As the Government itself points out, El Paso, Texas is only 30 miles from Chaparral, New Mexico. Mot. at 17. Las Cruces, New Mexico is less than an hour's drive from El Paso, Texas and approximately 35 miles from Chaparral, New Mexico. *See Flores v. Blinken*, No. 1:21-CV-00066, 2021 WL 6037593, at *2 (S.D. Tex. Oct. 20, 2021) ("Because the distance between the proposed venue and the existing venue is less than 100 miles, with a travel time of about an hour, this factor is neutral.").

[7] "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *See Emps. Mut.*, 618 F.3d at 1169.

*See* Admin. Off. of U.S. Cts., Federal Court Management Statistics (2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2021.pdf.

Thus, the factors the Government acknowledges—factors (1) plaintiff's chosen forum; (2) accessibility of witnesses and evidence; (3) cost of making the necessary proof; and (6) docket congestion—are either neutral or weigh against transfer for the aforementioned reasons. As to the factors the Government does not specifically address—factors (4) the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical—(i) any judgment in response to the relief Plaintiffs seek would be enforceable in either district; (ii) the FTCA requires bench trials and, to the extent a jury is empaneled, there is no reason to think such a trial would be less fair in one district versus the other; (iii) the likelihood of choice of law issues is limited and courts would apply New Mexico choice of law principles given this case was properly brought in this district[8]; (iv) this district is best situated to determine questions of New Mexico law; and finally, (v) the close proximity of the two courts suggests trial would be equally easy, expeditious, and economical in either forum.

The Government has not shown how it or any witnesses would be inconvenienced by litigating in the Plaintiffs' chosen district, and thus it has not met its burden for transfer. Rather,

---

[8] Because this case was properly brought in this district, New Mexico's choice of law principles must be applied. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). To the extent there are material differences in the applicable law for the various different counts in Plaintiffs' Complaint, this Court's familiarity with New Mexico's choice of law rules counsels against transfer, not in favor.

the convenience factors the Tenth Circuit directs this Court to apply either cut against transfer or are neutral. *See Miller v. Paschall Truck Lines, Inc.*, No. CV 20-303 GBW/SCY, 2020 WL 4192497, at *6 (D.N.M. July 21, 2020) ("In the absence of factors strongly favoring the movant, this case shall remain in Plaintiff's chosen forum." (internal citation omitted)). This is hardly surprising given the short distance between El Paso, on the one hand, and Chaparral and Las Cruces (where this Court sits), on the other hand. The Government cannot seriously contend that transfer is strongly favored where, as here, the courthouses in the proposed transferor and transferee districts are a mere one hour drive apart. Accordingly, the Government's motion to transfer should be denied.[9]

## II.   The Court Should Deny the Government's Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction

### A.   Applicable Law and Legal Standard

Plaintiffs' causes of action arise under the FTCA. The FTCA explicitly waives the sovereign immunity of the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" 28 U.S.C. § 1346(b)(1). The FTCA's waiver of sovereign immunity, in turn, contains certain narrow exceptions. *See* 28 U.S.C. § 2680(a).

In order to avoid dismissal under the FTCA's exceptions, Plaintiffs need only "allege facts that place [their] claim facially outside the exception." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999). When considering a motion to dismiss, the Court "view[s] all

---

[9] Plaintiffs note that they have consented to multiple requests from the Government to extend the Government's time to answer or respond to Plaintiffs' Complaint. "Transfer at this point will only cause more delay." *See Hem v. Toyota Motor Corp*., No. 09CV888 MCA/RLP, 2010 WL 11483952, at *4 (D.N.M. Apr. 19, 2010).

of the allegations in the complaint as true and draw[s] reasonable inferences in the light most favorable to the non-moving party." *Williams v. Hansen*, 5 F.4th 1129, 1132 (10th Cir. 2021) (citing *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016)). The "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### B.   The Government's Motion Mischaracterizes the Complaint

The Government's arguments for dismissal suffer from a common defect: they are not directed at the claims the Plaintiffs have actually pled. Plaintiffs' Complaint alleges "a long sequence of cruel and inhumane mistreatment by United States employees and contractors," including physical and sexual violence, prolonged separation, and intentionally compounding the trauma of separation by, among other actions, threatening Plaintiffs that they would never see each other again. Compl. ¶¶ 28–102. Instead of addressing the totality of Government officials' actions alleged in the Complaint, the Government attempts to recast the campaign of mistreatment suffered by Plaintiffs as only involving "the decisions to prosecute Plaintiff Sabillon Paz and to detain him pending prosecution or credible fear interview, which resulted in the separation of Plaintiff Sabillon Paz and Plaintiff A.E.S.E."[10] Mot. 22. Thus, for example, the Government argues that Plaintiffs' claims fall within the discretionary function exception because it has "broad discretion" to "enforce the Nation's criminal laws," "decide whether to prosecute a case," and "arrange for appropriate places of detention." Mot. 22, 23–24 (citations omitted). In the same vein, it contends that the due care exception encompasses Plaintiffs' claims because there was a statutory

---

[10] The Government also argues that any claim based on acts or omissions relating to the conditions of Plaintiffs' confinement are categorically barred by the discretionary function exception. Mot. 27–28. That contention should be rejected for the reasons stated in Part II.C.5, *infra*.

requirement to "transfer the custody of children to the care of ORR [Office of Refugee Resettlement] not later than 72 hours after determining that there is no parent available to provide care and physical custody." *Id.* at 33 (internal quotation marks and citation omitted). The Government also asserts that Plaintiffs cannot make the required showing that a private individual, under like circumstances, would be liable for the conduct described in the Complaint "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations." *Id.* at 34.

But Plaintiffs do not challenge the Government's prosecutorial discretion. Plaintiffs do not argue that there is anything inherently tortious about the Government enforcing its laws, making prosecutorial decisions, transferring custody of unaccompanied children in detention, or deciding where to house detainees. Instead, Plaintiffs allege that Government officials engaged in tortious conduct by forcibly separating Plaintiff Sabillon Paz from A.E.S.E. without explanation; purposefully and outrageously multiplying the trauma of separation by taunting each Plaintiff and telling them they would never see each other again; refusing to provide Plaintiffs information about their family members' whereabouts or well-being; and continuing Plaintiffs' separated detention for a prolonged time, all in a manner designed to increase Plaintiffs' emotional distress. Compl. ¶¶ 42-43, 49, 64, 84, 98-99. The arguments advanced by the Government do not address that specific conduct. That is a fatal defect. "It is for [Plaintiffs] to pursue the theory of liability [they] deem[ ] best, and it is not for [Defendant] to decide which [theory] serves as the basis for [their] claim." *Margheim v. Buljko*, 855 F.3d 1077, 1087 (10th Cir. 2017).

This is not the Government's first attempt to defend the human tragedies caused by its campaign of family separations by recasting its actions as mere prosecutorial decisions. Several district courts have denied motions to dismiss FTCA cases addressing the Government's family-

separation practice. In each, the Government argued that, because it has discretion over some immigration decisions, it necessarily had discretion to separate families without notice and to keep them separated for weeks. In one of those cases, *A.P.F. v. United States*, the court specifically "reject[ed] the United States' re-categorization of Plaintiffs' factual allegations as standalone claims." 492 F. Supp. 3d 989, 996–97 (D. Ariz. 2020). In another case, *C.M. v. United States*, the court declined the Government's invitation "to parse the Complaint to assess whether claims with respect to individual factual allegations are barred." No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020), *appeal denied*, 2020 WL 5232560 (D. Ariz. July 6, 2020); *see also Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021) (denying motion to dismiss). The result here should be no different.

### C.     The Discretionary Function Exception Does Not Apply

The Government argues that its actions are protected by the discretionary function exception (DFE), which bars FTCA claims based on actions by government employees that (1) "involve an element of judgment or choice" and (2) are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322, 323 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 537 (1988)) (alterations omitted). The Government's conduct must satisfy both conditions for the exception to apply. Conduct is nondiscretionary "[i]f a federal law, regulation, or policy mandates or prohibits the conduct . . . because the official has no proper choice but to comply with that law, regulation, or policy." *Garcia v. United States*, 709 F. Supp. 2d 1133, 1148 (D.N.M. 2010). Further, even if law or policy grants discretion to a Government employee, an action will not fall within the DFE unless it "can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324–25.

### 1. The *Flores* consent decree and DHS rules and standards specifically proscribe the Government's conduct.

The Government first claims that its actions were discretionary because the Complaint does not "cite any statutes, regulations, policies, or constitutional provisions that prescribe a specific course of action[11] that the government was required to take in connection with the prosecution and detention of Plaintiff Sabillon Paz." Mot. 25; *see also id.* at 25, 26 (making a similar argument with regard to Plaintiff A.E.S.E.). However, this contention is plainly at odds with the Complaint, which painstakingly details the myriad ways in which the Government's actions violated the *Flores* consent decree, Compl. ¶¶ 115–122, federal regulations, *id.* ¶ 123, Custom and Border Patrol's National Standards on Transport, Escort, Detention and Search (TEDS), *id.* ¶¶ 124, 128, 129, and Immigration and Customs Enforcement's Performance-Based National Detention Standards, *id.* ¶ 131. This Court has previously recognized that the discretionary function exemption does not shield the Government from liability where agency guidelines and standards "leave[] no room for choice" with mandatory language that "specifically prescribes a course of action." *Gallegos v. United States*, No. CV 08-0014 RB/LFG, 2009 WL 10664932, at *4, *5 (D.N.M. Feb. 26, 2009) (holding that guidelines in the Forest Services Manual were "undeniably

---

[11] To the extent the Government suggests that a policy or constitutional provision must provide affirmative instructions regarding a Government official's conduct in order to render the conduct nondiscretionary for purposes of the DFE, it is mistaken. Courts in the Tenth Circuit have not hesitated to find a nondiscretionary duty where the relevant rule *prohibited* a defined range of conduct. *See Lopez v. United States*, 376 F.3d 1055, 1058 (10th Cir. 2004) (finding a nondiscretionary mandate to follow state and local laws when determining mailbox locations and to relocate nonconforming mailboxes); *Garcia*, 709 F. Supp. 2d at 1145, 1148 (finding a genuine issue of material fact regarding whether policy instructing that officers "should not enforce minor violations" imposed a nondiscretionary duty). Here, as explained in the text, the Government's conduct violates a consent decree, multiple administrative rules and standards, and the Constitution.

mandatory"). Because the Government employees responsible for Plaintiffs' mistreatment had "no rightful option but to adhere to" the legal and policy directives identified in Plaintiffs' Complaint, *Berkovitz*, 486 U.S. at 536, their actions are not shielded by the DFE.

In particular, several aspects of the *Flores* agreement impose specific, mandatory duties upon the Government. These include provisions regarding the conditions under which minors may be detained as well as the Government's duty to "make and record the prompt and continuous efforts on its part toward the . . . release of the minor," *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020). The Government's contrary argument, Mot. 25, has been rejected by at least two courts. *See Ruiz v. United States*, No. 13-cv-1241 KAM SMG, 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014); *Villafuerte v. United States*, No. 7:16-cv-619, 2017 WL 8793751, at *13 (S.D. Tex. Oct. 11, 2017).

### 2.     The Constitution prohibits the Government's conduct.

The Government's forcible, cruel, and prolonged separation of Plaintiffs cannot qualify as discretionary for purposes of the DFE for the independent reason that Plaintiffs have plausibly alleged this conduct was unconstitutional. Compl. ¶¶ 132–140. Government officers have "no 'discretion' to violate the Federal Constitution; its dictates are absolute and imperative." *Owen v. City of Independence*, 445 U.S. 622, 649 (1980). While the Tenth Circuit has not squarely decided this issue, the overwhelming majority of courts of appeals have recognized that federal officials lack the rightful option to engage in unconstitutional conduct. *See Martinez v. United States*, 822 F. App'x 671, 678 (10th Cir. 2020) (observing that "most circuits have held that conduct is not discretionary under the FTCA when it violates the Constitution," but deciding that officers' conduct was not unconstitutional); *Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016) ("A constitutional limit on governmental power, no less than a federal statutory or regulatory one

19

. . . circumscribes the government's authority even on decisions that otherwise would fall within its lawful discretion); *Limone v. United States*, 579 F.3d 79, 101–02 (1st Cir. 2009) (It is "elementary that the discretionary function exception does not immunize the government from liability for actions proscribed by federal statute or regulation[, n]or does it shield conduct that transgresses the Constitution."); *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority.") (citation omitted); *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988) ("Federal officials do not possess discretion to violate constitutional rights or federal statutes."); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (same); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) (noting that an "action does not fall within the discretionary function of § 2680(a) when governmental agents exceed the scope of their authority as designated by statute or the Constitution."); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) (holding "that the FBI's alleged surveillance activities f[e]ll outside the FTCA's discretionary function exception because [the plaintiff] alleged they were conducted in violation of his First and Fourth Amendment rights."); *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). *But see Shivers v. United States*, 1 F.4th 924 (11th Cir. 2021), *cert. filed*, No. 21-682 (U.S. Nov. 5, 2021). *Cf. Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) (applying DFE where federal officer closely followed published directive under the guidance of agency counsel, even if the directive was constitutionally invalid), *cert. denied*, 141 S. Ct. 159 (2020).

The Government has not argued that its conduct complied with the Constitution. Nor could it reasonably do so. The "substantive due process right to family integrity . . . is well established."

*Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). In a due process challenge to executive action, the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

The allegations here easily meet this standard. Plaintiffs came to the United States seeking asylum. Compl. ¶ 28. After Plaintiffs arrived, Government agents subjected Plaintiffs to terrifying and degrading treatment which included: insulting Plaintiffs and taunting them with the prospect of forced separation; detaining them in a freezing, dirty cell; forcing Plaintiffs to watch other families being separated, before forcibly pulling Plaintiff A.E.S.E. out of her father's arms; and refusing to answer Plaintiff Sabillon Paz's questions regarding where his daughter would be taken. *See, e.g.* Compl. ¶¶ 31-32, 34-35, 41-43. The Government's purpose for doing so was to dissuade Plaintiffs from pursuing their asylum claims—claims that Plaintiffs have a legal right to present— and to drum up publicity that might discourage others from seeking asylum. Compl. ¶¶ 23, 45.

Upon considering these same practices, the Southern District of California held:

> These allegations sufficiently describe government conduct that arbitrarily tears at the sacred bond between parent and child, and is emblematic of the "exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective[.]" . . . Such conduct, if true, as it is assumed to be on the present motion, is brutal, offensive, and fails to comport with traditional notions of fair play and decency. At a minimum, the facts alleged are sufficient to show the government conduct at issue "shocks the conscience" and violates Plaintiffs' constitutional right to family integrity.

*L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1167 (S.D. Cal. 2018) ("*L. I*") (citation omitted).

Indeed, every court that has considered the constitutionality of the Government's past practice of separating families at the border has found that the practice is likely unconstitutional.

As in *L. I*, in *de Nolasco v. U.S. Immigr. & Customs Enf't*, the court "easily conclude[d]" that plaintiffs were "likely to succeed on . . . their substantive due process claim that their continued separation . . . violate[d] their right to family integrity under the Fifth Amendment." 319 F. Supp. 3d 491, 499 (D.D.C. 2018). And, in *J.S.R. ex rel. J.S.G. v. Sessions*, which considered the same family-separation practice, even the Government "agree[d] that a constitutional violation occurred when the Government separated children from their parents." 330 F. Supp. 3d 731, 741 (D. Conn. 2018). The *L. I* court ultimately enjoined the government's family-separation practice, holding that "a finding of likelihood of success" on the substantive due process claim was "assured" in that case. *L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018) (*L. II*), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019). Tellingly, the Government cannot identify a single case—from any jurisdiction—concluding that forcibly separating families in circumstances analogous to those alleged in the complaint is constitutional.

Similarly, every court that has weighed in on the issue has concluded that, because the Government's practice of forcibly separating families at the border was almost certainly unconstitutional, it cannot be shielded by the DFE. Thus, in *C.M.*, the court followed *L. II*, and concluded that plaintiffs had "plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception." 2020 WL 1698191, at *4. The *A.P.F.* court reached a similar conclusion, holding that, "[b]ecause government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs." 492 F. Supp. 3d at 996. And in *Nunez Eueda*, the court, also following *L. I*, concluded that plaintiff "ha[d] plausibly alleged that the government's Policy [of separating families at the border] violated his constitutional rights" and that, as a result, "the discretionary function

[exception] d[id] not bar [his] claims." 2021 WL 4895748, at *3. The sole court to dismiss a family separation case based on the DFE was not presented with—and did not decide—the question presented here regarding the DFE's applicability to constitutionally prohibited conduct. *See Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020).

The Government is asking this Court to break new ground. To hold that the DFE applies at this early stage of the case (when the Court must accept Plaintiffs' allegations as true and draw all reasonable inferences in their favor), the Court would need to conclude either that the Government's separation of Plaintiffs' family was constitutional, or that the DFE applies notwithstanding the likely unconstitutionality of that conduct. If this Court were to reach either conclusion, it would be the first. The uniform weight of authority all holds that allegations of this type plausibly allege a constitutional violation such that the DFE does not apply.

> **3.     Plaintiffs are not required to show their constitutional right to family integrity was clearly established.**

Instead of arguing that its employees acted within their constitutional authority when engaged in the conduct described in the Complaint, the Government argues that principles of qualified immunity should be incorporated into the DFE, Mot. 28–31, and that the DFE therefore shields the Government from tort liability for unconstitutional conduct so long as "the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited." Mot. 28–31. No court has embraced the Government's novel argument, and for good reason. *See Loumiet*, 828 F.3d at 946 ("We have found no precedent in any circuit holding as the government urges, nor does it cite any. At this juncture we see no cause to make this the first."). Conflating qualified immunity standards and the DFE would run counter to structure of the FTCA and frustrate the balance struck by Congress between providing

compensation for wrongful actions of Government employees and protecting officials' legitimate policy prerogatives.

The common law doctrine of qualified immunity and the statutory language of the DFE are hardly interchangeable. Qualified immunity is held personally by public officials. "As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). *Personal* liability against public servants for official acts imposes social costs, including "the expenses of litigation, the diversion of official energy from pressing public issues, . . . the deterrence of able citizens from acceptance of public office[, and] . . . the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Id.* at 814 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). For these reasons, courts will only hold officials *personally liable* if "clearly established law" forbade their conduct. *Id.* at 818. "[T]he premise of qualified immunity is that state officials should not be held [personally] liable for money damages absent fair warning that their actions were unconstitutional." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 674 (9th Cir.), *cert. denied*, 142 S. Ct. 711 (2021). Otherwise, the "fear of personal monetary liability and harassing litigation [might] unduly inhibit officials in the discharge of their duties, to the detriment of the public interest." *Loumiet*, 828 F.3d at 946.

Congress chose a different path when it enacted the FTCA. "[T]he remedy against the United States under the FTCA [is] exclusive for torts committed by federal employees acting within the scope of their employment." *Levin v. United States*, 568 U.S. 503, 509 (2013) (citing 28 U.S.C. § 2679(b)(1)). Because the United States is liable for the conduct of its employees under the circumstances described by the FTCA, "[a]ny other civil action or proceeding for money

24

damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded." 28 U.S.C. § 2679(b)(1). In other words, federal employees enjoy *absolute personal immunity* from suit for any tortious action committed within the scope of their employment. Thus, the "fear of personal monetary liability" that justifies qualified immunity, *Loumiet*, 828 F.3d at 946, is simply inapposite under the FTCA. *See Galvin v. Hay*, 374 F.3d 739, 756–58 (9th Cir. 2004) (holding that DFE did not apply to FTCA claims because officers' conduct violated the Constitution, while at the same time granting qualified immunity to the officers because the relevant constitutional law was not clearly established). The question under the DFE is not whether officials have been provided fair notice before imposing personal liability, but rather whether the official *actually possesses* the "rightful option" to depart from a constitutional mandate. *Berkovitz*, 486 U.S. at 536.[12]

> **4.    The Government's actions were not grounded in considerations of public policy.**

Even if the Government's course of conduct in leveraging Plaintiffs' separation to inflict emotional distress qualifies as discretionary, such conduct fails to satisfy the DFE's second condition because "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of" immigration enforcement. *Gaubert*, 499 U.S. at 324–25. As described above, Part II.B, *supra*, Plaintiffs do not simply complain about the Government's decision to prosecute Plaintiff Sabillon Paz and its determination incidental to the criminal prosecution that

---

[12] Further, even accepting the government's premise that a constitutional directive must be "clearly established" in order to remove an official's discretion, the "substantive due process right to family integrity . . . is well-established." *Rosenbaum*, 663 F.3d at 1079; *see also L. I*, 302 F. Supp. 3d at 1167.

Plaintiff A.E.S.E. became unaccompanied. Rather, Plaintiffs allege that they were subjected to a campaign of violence, threats, ridicule, and coercion that was not grounded in any "permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537.

The Tenth Circuit and Supreme Court have repeatedly rejected the argument that simply because the Government has policy-based discretion in a certain sphere—here, its criminal prosecutorial discretion—any action related to that sphere is necessarily grounded in policy judgment for the purposes of the DFE. For example, in *Boyd v. United States*, the plaintiff was struck by a boat while swimming in a lake that was under the jurisdiction and control of the Army Corps of Engineers. 881 F.2d 895, 896 (10th Cir. 1989). The plaintiff claimed that the Government had negligently failed to zone the area so as to restrict the entry of boats and had negligently failed to warn swimmers that boats were permitted in the area where plaintiff was struck. *Id.* The Tenth Circuit held that "the decision to zone lakes, including which parts to zone and which parts to leave unrestricted, constitutes an exercise of discretion involving competing economic and social considerations." *Id.* at 897. However, the Tenth Circuit "decline[d] to extend the veil of discretion" to cover the failure to warn claim because the "failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned." *Id.* at 898; *see also Duke v. Dep't of Agric.*, 131 F.3d 1407, 1411 (10th Cir. 1997) (rejecting the view that any decision "that involve[s] choice and any hint of policy concerns [is] discretionary and within the exception"); *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955) (distinguishing between the properly discretionary decision to locate a lighthouse in a particular area and the nondiscretionary duty to maintain the lighthouse in good working order once built); *Gaubert*, 499 U.S. at 325 n.7, 326 (observing that while driving a car "requires the constant exercise of discretion, the official's

26

decisions in exercising that discretion can hardly be said to be grounded in regulatory policy," even if the car was being driven "in connection with" the performance of a discretionary function). This Court has likewise required a legitimate nexus between the Government's actions and its purported policy judgments. *Skeet v. United States*, No. 10-0107 RB/WDS, 2012 WL 12884686, at *6 (D.N.M. Jan. 25, 2012) (finding "no significant social, economic, or political policy considerations" that would immunize the Government from tort liability under the DFE).

Like the conduct at issue in *Boyd*, the Government's separation of Plaintiffs was not based on legitimate social, economic, or political policy considerations. In general, there are very few legitimate reasons to forcibly separate parents from their children. The "cruelty of . . . separation of a parent and child by the government" is only justified "in the most dreadful circumstances," such as when the parent is "unwilling or unfit" to care for the child—circumstances that are not present here. *D.J.C.V. v. U.S. Immigr. & Customs Enf't*, No. 18 Civ. 9115 (AKH), 2018 WL 10436675, at *1 (S.D.N.Y. Oct. 15, 2018). Unsurprisingly, courts that have evaluated the Government's practice of separating families at the border have been unable to discern any legitimate governmental objective the practice served. The *L. I* court, for example, concluded that separating families at the border was "emblematic of the exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective." 302 F. Supp. 3d at 1167 (citation and internal quotation marks omitted).

Even if the decision to separate Plaintiffs was grounded in legitimate policy interests, the DFE would not shield the Government from liability for much of the conduct alleged in the Complaint. *See Franklin Sav. Corp.*, 180 F.3d at 1136 (observing that the discretionary "decision itself" must "immediately cause[ ] the harm" to trigger the DFE (citations omitted)); *Moore v. Valder*, 65 F.3d 189, 197 (D.C. Cir. 1995) (observing that discrete injury-causing actions can be

27

"sufficiently separable from protected discretionary decisions to make the discretionary function exception inapplicable"), *abrogated on other grounds by Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); *Marlys Bear Med. v. United States*, 241 F.3d 1208, 1215 (9th Cir. 2001) ("The *decision* to adopt safety precautions may be based in policy considerations, but the *implementation* of those precautions is not." (emphasis added)).

Here, to take just one example, the Complaint alleges that numerous Government officials mocked Plaintiffs before, during, and after their separation in a concerted effort to increase the emotional distress of separation. *See* Compl. ¶ 31 (arresting CBP officer threatening Plaintiff Sabillon Paz that he would "lose his daughter"); *id.* ¶ 38 (CBP officers making jokes about inadequate food); *id.* ¶ 41 (CBP officers saying "all Hondurans were garbage," that Plaintiff Sabillon Paz should "be put in a garbage can," and "Welcome to hell—you've already lost your daughter."); *id.* ¶ 42 (taunting and mocking during actual physical separation); *id.* ¶ 49 (responding with ridicule when Plaintiff Sabillon Paz inquired about the whereabouts of his daughter); *id.* ¶ 66 (lying about contents of papers consenting to deportation and taunting Plaintiff Sabillon Paz when he did not fall for the unlawful ruse); *id.* ¶ 84 (threatening Plaintiff A.E.S.E., immediately after sexually assaulting her, that if she told anyone about what had happened, she would never see her parents again); *id.* ¶¶ 97–98 (threatening that she would be detained longer if she kept vomiting, calling her a liar, and telling her that she was never going to see her parents again). The Complaint plausibly alleges that Plaintiffs' separation was one among many tortious actions taken in concert to maximize their suffering. *See*, *e.g.*, *id.* ¶ 45 (alleging that DHS officers "used Mr. Sabillon Paz's isolation, physical pain, humiliation, and untreated medical needs to torment and traumatize him"). The Government has proffered no reason to believe that any of these actions were "based on

considerations of public policy," *Berkovitz*, 486 U.S. at 537, and, therefore, the DFE does not apply.

### 5. Claims concerning conditions of confinement are not categorically barred by the DFE.

Without actually conducting the two-step inquiry demanded by *Berkovitz*, the Government categorically asserts that "claims based on acts or omissions relating to 'conditions of confinement' are barred by the DFE because the manner in which the government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations." Mot. 27 (citations omitted). However, no such "conditions of confinement" bar exists,[13] and courts regularly decline to apply the DFE to the nondiscretionary conduct of Government employees responsible for the custody of detained individuals. *See, e.g., Ruiz*, 2014 WL 4662241, at *8 (denying motion to dismiss involving conditions-related provisions of the *Flores* settlement agreement); *Keller v. United States*, 771 F.3d 1021, 1025-26 (7th Cir. 2014) (denying defendant's motion for summary judgment when it had pointed to "no evidence in the record to contradict [plaintiff's] claims that the guards were simply lazy or inattentive"); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475-76 (2d Cir. 2006) (per curiam) (denying motion to dismiss and finding that subject-matter jurisdiction existed over plaintiff's claims that prison guards "failed to patrol ... out of laziness or inattentiveness"); *Lucero v. United States*, No. CIV 00-357 MCA/LFG (ACE), 2002 WL 35650045, at *5 (D.N.M. Mar. 25, 2002) (refusing to grant JMOL, as police officers' failure to monitor detained individual or remove his belt prior to suicide were not susceptible to

---

[13] The Government's decision not to address Plaintiffs' other claims regarding injuries suffered in detention, Mot. 2 n.1, further illustrates how reflexively applying the DFE to "conditions of confinement" claims is unmoored from the relevant legal standard.

policy analysis under the DFE); *Coffey v. United States*, 906 F. Supp. 2d 1114, 1163 (D.N.M. 2012) ("Once the [Bureau of Indian Affairs] exercises its discretion in deciding to undertake to transfer inmates, under *Indian Towing Co.,* its duty to take due care in performing the transfer is not covered by the discretionary-function exception"); *Ajaj v. United States*, No. 03CV01959MSKPAC, 2006 WL 1305198, at *3 (D. Colo. May 11, 2006) (holding the DFE does not apply when prison officials negligently fail to provide prescribed medical treatment in accordance with the Government's "statutory, nondiscretionary duty to provide for the safekeeping of inmates pursuant to 18 U.S.C. § 4042(a)"). There is no special rubric to determine whether the DFE applies in a custodial setting. Rather, the Court should simply apply the two-step *Berkovitz* test in the manner described above and conclude that the DFE does not apply to the Government's tortious conduct. *See also C.M.*, 2020 WL 1698191, at *4 & n.5 (declining to parse the complaint at the motion to dismiss stage to assess whether individual conditions claims are barred because the complaint incorporated all facts of the Government's actions into each count).

> **D.    The Due Care Exception Does Not Shield the Government from Liability for Plaintiffs' Claims**

The due care exception to the FTCA ("DCE") bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a *statute or regulation*, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a) (emphases added). The DCE does not apply to Plaintiffs claims because Government officials were not "executing the *mandates* of" any statute or regulation when they forcibly separated and detained Plaintiffs. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (emphasis added). Moreover, Government officials failed to exercise due care when separating them and engaging in other mistreatment. *Cf. id.* at 652.

1.   **No statute or regulation mandated the DHS agents' cruel treatment and separation of plaintiffs.**

The statutory text of the DCE makes clear that the exception pertains only to "the execution of a *statute or regulation*." 28 U.S.C. § 2680(a) (emphases added). The government cites no authority to justify ignoring the plain language of the DCE to expand its reach beyond statutes and regulations. Other courts have declined to do so and reaffirmed that the DCE does not apply where an executive order setting forth a policy, rather than a statute or regulation, directed the conduct at issue. *See Garcia-Feliciano v. United States*, No. CIV. 12-1959 (SCC), 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (DCE "would not apply here . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct" (citing *Welch*, 409 F.3d at 652)); *Gonzalez v. United States*, No. CV-12-01912 DMG (DTBx), 2013 WL 942363, at *3-4 (C.D. Cal. Mar. 11, 2013) ("Because Plaintiff's detention was not the result of a statutorily prescribed course of action," his claims were not barred by the DCE.).

The Government cannot (a) identify any *statute or regulation* that (b) *mandated* the cruel treatment and separation of Plaintiffs upon their entry into the United States.

Simply put, there was no statute or regulation requiring the Government to separate Plaintiffs. By the Government's own admission, it separated the Plaintiffs pursuant to its *policy* of zero tolerance. Mot. 11-12. But a policy (identified, only in part, in a memo) creates no statutory or regulatory mandate. Indeed, the Government has admitted it voluntarily stopped separating families in the circumstances alleged in the Complaint, despite no intervening change in law or regulation. *See* Mot. 2-3. Every court that has addressed the question has concluded that no law or regulation prescribed the practice of family separation. *See Nunez Eueda,* 2021 WL 4895748, at *3-4; *A.P.F.*, 492 F. Supp. 3d at 995-96; *C.M.*, 2020 WL 1698191, at *3.

In arguing that the DCE applies, the Government relies exclusively on 8 U.S.C. § 1232(b)(3), which establishes a deadline by which the federal government must transfer an unaccompanied child to the custody of the Department of Health and Human Services. A.E.S.E., however, was not unaccompanied, and only separated from her father as a result of the Government's unlawful conduct. The statute makes no reference to separating *accompanied* children from their parents, or subjecting them to cruel, harsh, and threatening treatment, let alone *mandates* such conduct. *See C.M.*, 2020 WL 1698191, at *3 ("The United States cites no statute or regulation mandating the separation"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (in order for DCE to apply, actions must be performed "under and in furtherance of the regulation"); *Watson v. United States*, 179 F. Supp. 3d 251, 270-71 (E.D.N.Y. 2016) (concluding the DCE was inapplicable because the statutes the Government cited did not *mandate* the conduct at issue—detention of plaintiff), *aff'd in part, rev'd in part on other grounds*, 865 F.3d 123 (2d Cir. 2017). To the contrary, *Flores*, agency directives, and the Constitution all prohibited such actions. *See* Parts II.C.1–2, *supra*.

### 2.  In any case, DHS agents did not exercise "due care."

Even if a statute or regulation mandated the separations and subsequent cruelty (and none did), the DCE would not bar Plaintiffs' claims because the Government failed to exercise "due care" in "following the dictates of" any such mandate. *Welch*, 409 F.3d at 652. In considering whether federal officers acted with due care, "[t]he relevant question is one of reasonableness." *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987); *see also Hatahley v. United States,* 351 U.S. 173, 181 (1956) ("'Due care' implies at least some minimal concern for

the rights of others."). [14] The Government's motion does not even address whether the DHS agents here exercised due care.

To the contrary, the actions of DHS agents in separating Plaintiffs reflects an inherent lack of due care. Plaintiffs allege ample facts demonstrating this. Officials left Plaintiffs in the dark about why they were being separated and for how long. Compl. ¶¶ 42-43, 49. They kept father and child separated for weeks without providing any updates or any means of communication. *Id.* ¶¶ 44, 49, 99. They refused to answer Mr. Sabillon Paz's basic questions about where his daughter was located and how she was faring. *Id.* ¶¶ 43, 49. They attempted to leverage the pain of separation to coerce Mr. Sabillon Paz into abandoning his claim for asylum and accepting deportation. *Id.* ¶¶ 45, 47, 60, 65, 67. They mocked Plaintiffs. *Id.* ¶¶ 41, 42, 49, 66. They denied Plaintiff Sabillon Paz medical care, even in the face of repeated, painful symptoms. *Id.* ¶¶ 51, 57. And in the case of A.E.S.E, a minor child of tender years, they exposed her to emotional, physical, and sexual abuse, *id.* ¶¶ 83-86, and needlessly prolonged her detention by refusing to release her into the custody of her grandparents without explanation, *id.* ¶ 89. As these allegations show, Government officials did not exhibit even a "minimal concern" for Plaintiffs when separating them. *Hatahley*, 351 U.S. at 181. Quite the opposite. The DCE therefore does not apply.

E.    **Plaintiffs' Claims Satisfy the FTCA's Private Analogue Requirement**

_____

[14] Though the Court was not grappling with the threshold jurisdictional question at issue here (i.e., whether the due care requirement of the DCE has been met), this Court's decision in *Coffey*, 906 F. Supp. 2d at 1169–70, may be instructive on the question of due care. There, the Court looked to the RESTATEMENT (SECOND) OF TORTS § 314A (1965) and found that the Restatement imposed a duty on one who is "required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection." *Id.* (quoting the *Restatement (Second) of Torts* § 314A). The duty, the Court found, is one of "reasonable care under the circumstances" to protect against unreasonable risk of harm. *Id.* at 1170.

The FTCA imposes liability on the United States when "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963). Plaintiffs satisfy this private analogue requirement because courts applying Texas law have not hesitated to award tort damages when private individuals unlawfully separate children from their parents.

When evaluating whether a suitable private analogue exists, courts look to "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, the laws of Texas apply, as the United States apprehended and separated Mr. Sabillon Paz from his daughter in Texas.[15] This Court has jurisdiction pursuant to the FTCA because private persons may be held liable under Texas law for intentional infliction of emotional distress ("IIED") and negligence in situations where a child is separated from their parents. *See Eberle v. Adams*, 73 S.W.3d 322, 337 (Tex. App. 2001) (upholding a jury award of $1 million in damages for IIED, interference with possessory interest, and conspiracy for the unlawful separation of a child from its parent); *Silcott v. Oglesby*, 721 S.W.2d 290, 292 (Tex. 1986) (holding parents may recover damages for mental suffering caused by abduction of a minor child without a showing of actual physical injury when the tort was willful or intentional); *accord C.M.*, 2020 WL 1698191, at *2 (recognizing the viability of an Arizona-based IIED claim where the Complaint contained "ample factual allegations suggestion that the government's separation of families was motivated by malice.")

The Government further argues there is no private analogue that would support a claim under the FTCA "[b]ecause only the federal government has the authority to enforce federal

---

[15] Texas courts have recognized IIED as a tort under state law. *See Twyman v. Twyman*, 855 S.W.2d 619, 624 (Tex. 1993).

criminal and immigration laws and make detention determinations." Mot. 34. As discussed in Part II.B, *supra*, this argument misstates the law and the nature of Plaintiff's Complaint.

The fact that Defendant's conduct occurred in a uniquely governmental context, like immigration enforcement or detention, does not mean that there is no private analogue for the conduct. *See Indian Towing Co.*, 350 U.S. at 64-65 (rejecting the Government's contention that there can be "no liability for negligent performance of 'uniquely governmental functions.' "); *United States v. Olson*, 546 U.S. 43, 46 (2005) (same); *Muniz*, 374 U.S. at 153 (even though federal confinement of inmates was uniquely federal in character, negligence actions were allowed to proceed). The requirement that a claim brought under the FTCA address "*like* circumstances" does not mean that it must be raised "under *the same* circumstances," *Indian Towing Co.*, 350 U.S. at 64 (emphasis added). This principle has been recognized by the Tenth Circuit. *See Kikumura v. Osagie*, 461 F.3d 1269, 1299-300 (10th Cir. 2006) (rejecting the argument that the Government's unique role in holding individuals in criminal detention means no state analogue exists for their negligence in carrying out that role.); *accord In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 288 (5th Cir. 2012) ("Because the federal government could never be exactly like a private actor, a court's job in applying the standard is to find the most reasonable analogy.").

The Government has also mischaracterized the relevant facts, as the authorities it cites are not analogous to behavior challenged by Plaintiffs. The cases cited by the Government establish that there is no private analogue for the negligent denial of an immigration adjustment of status application, *see* Mot. 35, citing *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018), and no private analogue for individuals challenging the withdrawal of immigration benefits, *see* Mot. 35, citing *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019). Plaintiffs here do not challenge the adjudication of immigration status, nor are they challenging the Government's

authority to enforce immigration laws. Rather, the tortious conduct underlying Plaintiffs' claims occurred when, among numerous other acts of intentional cruelty, the Government forcibly separated Mr. Sabillon Paz from his daughter and left the seven-year-old A.E.S.E. alone in a CBP facility where she was sexually abused by a federal employee. Because a private individual could be held liable for such harms, so too can the Government.

## CONCLUSION

For the foregoing reasons, the Court should deny the Government's Motion to Transfer, or in the Alternative, Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction in its entirety.

Respectfully submitted,

March 18, 2022

Michael T. Mervis*
Tara M. Brailey*
Proskauer Rose LLP
11 Times Square
New York, New York 10036
(212) 969-3000
mmervis@proskauer.com
tbrailey@proskauer.com

Bradley Jenkins*
Anne Recinos
Zachary Manfredi*
Asylum Seeker Advocacy Project (ASAP)
228 Park Ave. S. #84810
New York, NY 10003
(646) 937-0368
bradley.jenkins@asylumadvocacy.org
anne.recinos@asylumadvocacy.org
zachary.manfredi@asylumadvocacy.org

  /s/Leon Howard
Leon Howard
Rebecca Sheff
Zoila Alvarez Hernandez
ACLU of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(505) 266-5915
lhoward@aclu-nm.org
rsheff@aclu-nm.org
zalvarez@aclu-nm.org

*Counsel for Plaintiffs*
*\* Appearing pursuant to D.N.M.LR-Civ.*
*83.3(a).*

36

**CERTIFICATE OF SERVICE**

I certify that on March 18, 2022, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

*/s/Leon Howard*
Leon Howard