IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

A.E.S.E.., a minor child, and EUSEBIO DANIEL
SABILLON PAZ, her father,

      Plaintiffs,                                          No. 2:21-cv-00569-SMV-GBW

      v.

THE UNITED STATES OF AMERICA and
MANAGEMENT & TRAINING CORPORATION,

      Defendants.

### DEFENDANT UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER, OR IN THE ALTERNATIVE, PARITIAL MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**I.   INTRODUCTION**

Plaintiffs' action pursuant to the Federal Tort Claims Act is eligible to "be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omissions complained of occurred." 28 U.S.C. 1402(b). Plaintiffs simply allege that venue is proper because "[a] substantial portion of the acts and omissions giving rise to the claims occurred in this district." Doc. 1, ¶ 13. But the very few acts alleged involving government employees in New Mexico pertain only to Plaintiff Sabillon Paz. There are no acts or omissions pertaining to Plaintiff A.E.S.E. that are alleged to have occurred in this district. And while Plaintiffs' Response emphasizes the allegedly poor treatment and inadequate medical care that Plaintiff Sabillon Paz received at the Otero facility in Chaparral, New Mexico, it fails to offer support for Plaintiffs' argument that treatment that was nearly exclusively provided by Defendant MTC could be sufficient to establish venue in this district against the United States under 28 U.S.C. 1402(b).

1

In addition, Plaintiffs cannot show that the United States has waived its sovereign immunity regarding their claims of intentional infliction of emotional distress and negligence (the "Subject Claims") because the FTCA precludes challenges to (1) discretionary functions or duties, (2) actions taken while reasonably executing the law, and (3) actions for which there is no private person analog. Courts have differed in their decisions regarding the applicability of the discretionary function exception to cases involving family separation under the Zero-Tolerance Policy. The United States respectfully submits that the better reading of the law supports that the Subject Claims fall within the discretionary function exception.

## II.  ARGUMENT

### A.  Transfer to the Western District of Texas is the appropriate remedy.

#### 1.  <u>Plaintiffs have not established venue in this district.</u>

Plaintiffs acknowledge that they resided in Texas at the time they filed their Complaint; they now live in Ohio. Doc. 43-1. Thus, the Plaintiffs' place of residence cannot establish venue in this district. *See* 28 U.S.C. 1402(b) ("Any civil action on a tort claim against the United States under [the FTCA] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."). Plaintiffs' sole support for bringing their case against the United States in the District of New Mexico is the allegations of Plaintiff Sabillon Paz regarding his treatment during the time he was housed at the Otero County Processing Facility operated by Defendant MTC in New Mexico. Plaintiff A.E.S.E has no claims that can be appropriately tried in this district. Plaintiffs argue that Plaintiff Sabillon Paz's claims against MTC, and the very limited acts he alleges to have been committed by government employees in New Mexico, are sufficient to support their chosen venue for their FTCA claims.

Taking all of Plaintiffs' allegations as true, neither Plaintiffs' Complaint nor their Response is sufficient to tie their factual allegations to their legal claims against the Government. Counts I through VIII – the entirety of the legal claims against the United States – are made by both Plaintiff A.E.S.E. and Plaintiff Sabillon Paz, with the exception of Count V. Count V is Plaintiff Sabillon Paz's "conversion" claim that is apparently based on his allegation that his personal belongings were confiscated by CBP officers at the Paso Del Norte Processing Center in Texas. *See* Doc. 1, ¶ 33. Because it is undisputed that Plaintiff A.E.S.E does not reside in New Mexico and was never present in New Mexico during the relevant time period, her claims cannot form the basis for litigation in this district. And if all of the Counts against the United States – excepting Plaintiff Sabillon Paz's conversion claim arising out of conduct allegedly occurring in Texas – are brought by *both* Plaintiffs, then there is no apparent basis for venue in the District of New Mexico for either Plaintiff's FTCA claims. On that basis alone, the FTCA litigation should be transferred to the Western District of Texas.

Plaintiffs acknowledge as much about the basis for their FTCA claims, stating that Plaintiff Sabillon Paz's "medical negligence claim and all his other claims against MTC arise from acts or omissions that occurred within New Mexico." Doc. 43. at 10. But there is no legal authority to support that the venue for Plaintiffs' claims against the United States is proper in New Mexico simply because it is the proper venue for Plaintiffs' claims against MTC. The language of 28 U.S.C. § 1402(b) is clear: "Any civil action against the United States … may be prosecuted *only in* the judicial district … wherein the act or omission complained of occurred." (Emphasis added.) Plaintiffs' reliance on *Woods v. United States*, No. 2:16-CV-1041-JCH/SMV, 2017 WL 473+722 (D. N.M. Oct. 19, 2017), is misplaced. In *Woods*, the Court found that the plaintiffs' claims against the Government had a meaningful tie to New Mexico in part because the Texas physician employed

3

by the Government directed the injured plaintiff to seek treatment for the alleged negligence in New Mexico. *See Woods* at *5. Further, the plaintiffs in that case were New Mexico residents. *Id.*

      2.      <u>Defendant MTC is subject to jurisdiction in Texas.</u>

Even if Plaintiffs could establish venue against the United States in the District of New Mexico, the more convenient district for this action is the Western District of Texas pursuant to 28 U.S.C. § 1404(a). Plaintiffs contend that the Government has failed to establish that MTC is subject to jurisdiction in Texas, but MTC's regional office and "continuous and systematic" presence in Texas provide a sufficient basis for it to be subject to general jurisdiction in Texas. *See* Doc. 31 at 16, citing *Daimler AG v. Bauman*, 517 U.S. 117, 138 (2014). Plaintiffs' allegations also support that MTC is subject to specific jurisdiction in Texas. Plaintiff Sabillon Paz was transferred directly from federal custody in Texas to the Otero facility in New Mexico on or about June 22, 2018. Doc 1, ¶ 52. By operating a facility that accepts migrant detainees directly from a border facility in Texas, *see id.*, ¶ 18, MTC "purposefully avail[ed]" itself of the privilege of conducting activities within" Texas. *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009) citing *Burger King Corp v. Rudzewicz,* 471 U.S. 462 (1985) ("random, fortuitous or attenuated" contacts are not sufficient to establish personal jurisdiction).

      3.      <u>Plaintiffs' allegations support transfer under 28 U.S.C. § 1404(a).</u>

Plaintiffs' choice of forum "receives less deference" because they do not reside in New Mexico. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1168 (10th Cir. 2010). With respect to the accessibility of witnesses and sources of proof, few of either will be found in New Mexico having any applicability to Plaintiffs' FTCA claims as none of Plaintiff A.E.S.E.'s claims, and only a minimal component of Plaintiff Sabillon Paz's claims, arise from any act or omission in New Mexico. *See id.*; *see also* Doc. 1, ¶¶ 141-183. On the other hand, all of Plaintiffs'

claims related to their initial detention and separation will be addressed by witnesses and sources of proof found in Texas. While Plaintiffs initially argue that conflict of law consideration favor their chosen forum because "this district is best situated to determine questions of New Mexico law[,]" Doc. 43 at 13, they later assert that "the laws of Texas apply" with respect to claims related to their apprehension and separation. *Id.* at 34. Because all parties agree that Texas law applies to issues regarding Plaintiffs' apprehension, initial detention, and separation (to the extent that such claims against the United States are viable), this factor weighs in favor of transfer.

None of the other factors to be considered in analyzing transfer under § 1404(a) weigh against transfer. Data regarding the dockets of the two districts at issue show that the Western District of Texas may offer a shorter time for trial of this matter, even if its dockets appear to be busier. *See id.* at 12. Because the case has only just begun, the parties are unable to assess whether the cost of making necessary proof would be meaningfully different in either district. *See Employers Mut. Cas. Co.* at 1169. In light of the many factors supporting venue in Texas, and the near absence of any relationship between Plaintiffs' FTCA claims and New Mexico, the Court should transfer of the case, either in its entirety or only the claims against the Government[1], to the Western District of Texas.

      B.      **The Discretionary Function Exception bars Plaintiffs' claims.**

Plaintiffs' assertion that the Government has "mischaracterize[d]" their Complaint demonstrates both Plaintiffs' misreading of the Motion and the fundamental problem of the unspecified factual support for Plaintiffs' legal theories against the United States. The Motion argues

---

[1] *See* Doc. 28.

that the Court lacks subject matter jurisdiction over the Subject Claims; that is, Plaintiffs' claims of negligence and intentional infliction of emotional distress. Doc. 31 at 3. The Complaint alleges that Plaintiffs experienced emotional distress as the result of conduct by government employees, but the Complaint fails to identify any specific conduct by any government employee that was either negligent or specifically intended to cause emotional distress and outside the bounds of any government employee's discretionary function.

### 1. The United States' actions satisfy both prongs of the *Berkovitz* Test.

#### *a. The Government satisfies the first prong of the Berkovitz Test.*

To avoid the discretionary function exception ("DFE"), Plaintiffs must identify a "federal statute, regulation, or policy" that is both "specific and mandatory" that governed the challenged conduct. *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998). They have not met this burden.

The federal government possesses the express statutory authority to detain noncitizens after they illegally enter the country, *see* 8 U.S.C. §§ 1225, 1226(a), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," *id*. § 1231(g)(1). Plaintiffs do not contest that the Government had the discretion to initiate prosecution against Plaintiff Sabillon Paz for unlawful entry in violation of 8 U.S.C. § 1325(a)(1), and thus detain him for criminal proceedings. Nor do Plaintiffs dispute that the Government had the discretion to house Plaintiff Sabillon Pax in a secure immigration detention facility pending possible removal. *See* 8 U.S.C. § 1231(g)(1) (government has authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal"); *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of

Homeland Security]."). And Plaintiffs do not claim that the decision to determine that Plaintiff A.E.S.E. was "unaccompanied" within the meaning of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") is nondiscretionary. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016).

Instead, Plaintiffs assert that the United States violated the *Flores* Agreement, but the provisions cited lack the requisite specificity to abrogate the DFE. *See* Doc. 43 at 18. For example, a provision requires that the minor be provided "contact with family members arrested with the minor" but does not dictate how frequent the contact must be or whether in- person contact is required. *Flores* Agreement ¶ 12.A. For purposes of the Motion, it is undisputed that Plaintiffs were able to communicate with each other telephonically only for a period of time while Plaintiff A.E.S.E. was in ORR custody, Doc. 1 ¶ 99, or that she was only able to speak with her mother by phone a few times during that same period. *Id.* at ¶ 100. Similarly, a provision requires release of minors from federal custody "without unnecessary delay," but this term is vague. *Flores* Agreement ¶ 14. As the Ninth Circuit explained in interpreting "without unnecessary delay" in another context, the phrase "commits some definition of 'necessary' to the judgment of the agent in the field" and thus is subject to the DFE. *Conrad v. United States*, 447 F.3d 760, 765 (9th Cir. 2006). Finally, while a provision requires "prompt and continuous efforts . . . toward family reunification," it does not explain what exactly these efforts must entail and thus does not deprive the Government of discretion. *Flores* Agreement ¶ 18. Plaintiffs allege that they were reunited approximately 50 days after their separation. Doc. 1, ¶ 103.

Plaintiffs also reference 8 C.F.R. § 1236.3, *see id.*, ¶ 123, but this regulation only applies

7

to "[j]uveniles for whom bond has been posted, for whom parole has been authorized, or who have been ordered released on recognizance," 8 C.F.R. § 1236.3(b)). As for CBP's National Standards on Transport, Escort, Detention and Search ("TEDS"), these agency guidelines do not specifically prescribe a course of action and thus do not remove the Government's discretion. Instead, TEDS explains what "[g]enerally" "should" occur and provides guidelines for what the agency should do "to the extent operationally feasible." TEDS §§ 1.9, 5.6. But Plaintiffs cite no case law holding that the phrase "to the extent operationally feasible" divests an officer of discretion, *see* Doc. 43 at 28, and the Tenth Circuit has implied otherwise, *see Tippett v. United States*, 108 F.3d 1194, 1198-99 (10th Cir. 1997).

### b. The Government satisfies the second prong of the Berkovitz Test.

Under the second prong of *Berkovitz*, the Court must "*presume* that a government agency's acts are grounded in policy when no statute, regulation, or policy sets forth a required course of conduct; the challenger must allege facts showing otherwise." *Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020) (emphasis in original). Here, Plaintiffs cannot rebut the presumption that the Government's decisions were "*susceptible* to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991) (emphasis added).

First, Plaintiffs' speculation on the motivations of the decisionmakers, *see* Doc. 43 at 15, is misplaced as "[t]he focus of the inquiry is not on the [government officials'] subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis," *Gaubert*, 499 U.S. at 325. Second, while Plaintiffs argue that the United States cannot contradict the Complaint's allegations on a motion to dismiss, discovery is not needed into whether the alleged actions "could have been the result

of considered judgments grounded in policy considerations." Doc. 43 at 17. As the Tenth Circuit has explained, a "lack of record evidence describing an analysis of public policy factors . . . is immaterial" under the second prong of *Berkovitz*, since "failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability." *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993) ("This court has previously held that it is unnecessary for government employees to make an actual 'conscious decision' regarding policy factors.").

The United States has identified policy considerations implicated by the discretionary decisions to prosecute Plaintiff Sabillon Paz and to detain him in secure immigration detention pending his criminal proceedings, which resulted in the separation and placement of Plaintiff A.E.S.E. in ORR custody. See e.g., Doc. 31 at 22-23. All of these decisions are quintessential discretionary policy judgments subject to the DFE.[2] The Court should therefore reject Plaintiffs' efforts to "eviscerate the benefits of sovereign immunity that Congress has chosen to retain in discretionary function cases, … including the burden of discovery." *Sydnes v. United States*, 523 F.3d 1179, 1186 (10th Cir. 2008) (internal quotation marks omitted).

**C.  An alleged Constitutional violation does not alter the analysis.**

Plaintiffs argue that violations of constitutional mandates categorically preclude application of the FTCA's DFE. Doc. 43 at 27-35. This argument is unsuccessful for several reasons. As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Doe v. Woodward*, 912 F.3d

---

[2] Plaintiffs do not challenge the Government's authority to adjudicate immigration status or enforce immigration laws. Doc. 43 at 35.

1278, 1300 (10th Cir. 2019) (holding that a claim of violation of the right to familial association "requires much more than negligence"). Thus, any argument that constitutional violations can defeat the DFE is inapplicable to Plaintiffs' negligence claims.

Further, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, rather only by a showing that the Government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. *See, e.g.*, *Bryan v. United States*, 913 F.3d 356, 364 (3d Cir. 2019) ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE.). Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (recognizing that "§ 1346(b) does not provide a cause of action for" a "constitutional tort claim"). As noted, the Supreme Court has explained that when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that it removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute.

The Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution. The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when the conduct violated the Constitution, so long as the constitutional right was not defined with sufficient specificity that the official should have known the act was prohibited. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982) ("[G]overnment officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also*, *e.g.*, *Wilson v. Layne*, 526 U.S. 603, 614-615 (1999) (applying the "discretionary function[]" formulation and holding that officers were entitled to qualified immunity because, although their conduct violated the Fourth Amendment, the law was not clearly established at the time). Thus, when the Supreme Court in *Berkovitz* held that a federal mandate must "specifically prescribe[]" conduct in order to overcome the DFE, it referred to official immunity precedent, underscoring that the two standards operate in tandem. 486 U.S. at 536 (citing *Westfall v. Erwin*, 484 U.S. 292, 296-97 (1988)). Accordingly, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, but only by a showing that the government official's discretion was cabined by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated.

That standard is not satisfied here. Plaintiffs have alleged actions of various kinds by various officials. Regardless of whether some or all of these acts reflected an abuse of discretion, Plaintiffs have identified nothing in the decisions of the Supreme Court or the Tenth Circuit that removed any official's discretion with respect to any of the categories of asserted actions by "specifically prescrib[ing] a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. A constitutional right is clearly established when, "at the time of the conduct in question, there existed a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains." *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1169 (10th Cir. 2020) (internal quotation marks and alteration omitted).

Plaintiffs contend that the Government violated the Constitution by separating them. Doc. 43 at 19. But Plaintiffs cite only out-of-circuit district court cases that postdate the alleged violations in this case. *See id* at 21-22. Plaintiffs cannot show any violation of clearly established law at the time of the separation. Indeed, as the Fourth Circuit observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019); *see also Ramirez v. Reddish*, No. 2:18-CV-00176-DME-MEH, 2020 WL 1955366, at *31 (D. Utah Apr. 23, 2020) (Ebel, J., sitting by designation) (noting that, unlike a typical statute or regulation, which is "likely to state clearly a required course of action," the "application [of the U.S. Constitution] in a given situation is often fraught with uncertainty and nuance"). And while some district court decisions have concluded that constitutional allegations made the exception inapplicable, none has analyzed the relevant standards set out in the Supreme Court's FTCA decisions and in its decisions involving official immunity. Those principles make clear that the DFE bars Plaintiffs' Subject Claims.

     **D.**     **Plaintiffs' remaining claims concerning conditions of confinement are barred by the DFE.**

Plaintiffs also argue that their claims concerning their conditions of confinement should not be barred by the DFE. Doc. 43 at 39-40. While the Government is committed to safe and humane treatment of every individual in detention, Plaintiffs' conditions-of-confinement claims are barred by the DFE. Courts have repeatedly held that claims based on acts or omissions relating to "conditions of confinement" are barred by the DFE because the manner in which the Government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384 (5th

Cir. 2004) (applying DFE to negligence claim based on lack of safety equipment on bunk bed); *Rodriguez v. United States*, 415 F. App'x 143, 146-47 (11th Cir. 2011) (per curiam) (applying DFE to negligence claim regarding exercising equipment provided to detainees).

In particular, the amount of information provided to Plaintiffs about their confinement and reunification, as well as their ability to communicate by telephone, are the result of Plaintiff Sabillon Paz's initial confinement in criminal custody and secure immigration detention. The Government's decisions concerning how much and when to furnish information to detainees and when to permit phone use are discretionary decisions susceptible to policy considerations, and thus they fall within the DFE. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim."). These claims should thus be dismissed for lack of jurisdiction.

> **E.** **Plaintiff A.E.S.E's claims relating to the decision to transfer her to the custody of ORR are barred by the FTCA's exception for actions taken while reasonably executing law.**

The Court should also conclude that it lacks jurisdiction over Plaintiff A.E.S.E's claims relating to the decision to transfer her to ORR custody because the FTCA prevents the United States from being held liable for claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Thus, "[w]here government employees act

13

pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957).

Here, the United States is required to "transfer the custody" of children without legal immigration status to the care of ORR "not later than 72 hours after" determining that there is no parent available in the United States to provide care and physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the Government made the determination that Plaintiff Sabillon Paz, who was initially referred for criminal prosecution for unlawful entry, was unavailable to provide care and physical custody for Plaintiff A.E.S.E. The Government made the discretionary decisions to pursue prosecution of Plaintiff Sabillon Paz and to detain him in a secure immigration detention facility pending his criminal proceeding before it was ultimately dismissed. Once those protected discretionary determinations had been made, the TVPRA required that Plaintiff A.E.S.E be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.[3]

### F. Plaintiffs' claims are not actionable absent a private person analog.

Plaintiffs fail to allege a plausible private person analog for their claims. As to her intentional infliction of emotional distress ("IIED") claim, Plaintiffs contend that Texas substantive law should apply. Doc. 43 at 42-43. However, they disagree that the separation was

---

[3] In reaching the contrary conclusion, district courts have stated that there is no statute or regulation "requiring the separation of Plaintiffs upon their entry into the country." *A.P.F.*, 492 F. Supp. 3d at 996; *see also C.M.*, 2020 WL 1698191, at *4. But, as just described, federal law does require that children be placed into ORR custody if their parents are unavailable to provide care and physical custody. And for the reasons described above, the decision to detain those parents for prosecution, and to detain them pending removal, is a quintessentially discretionary one. In *A.P.F.* and *C.M.*, the plaintiffs were not charged with any crime, so those decisions are distinguishable on that basis.

14

privileged, based on their assertion that the separation was unconstitutional. Here too, there is no exception for allegedly unconstitutional conduct. The FTCA applies "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In *Meyer*, the Supreme Court explained that a "constitutional tort claim . . . would not contain such an allegation," since a private person cannot violate the Constitution. 510 U.S. at 478; *see also Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997) (explaining that the Fifth Amendment's due process clause "provides no protection against private actions by private individuals."). Hence, unconstitutionality has no bearing on the private person analog. *Accord Ramirez*, 2020 WL 1955366, at *25 (refusing to allow recovery under the FTCA for alleged violations of the Utah constitution, since "Plaintiffs have not shown that a private individual would be liable under Utah law for the two state constitutional violations"). In addition, as courts have acknowledged, "parents and children may lawfully be separated when the parent is placed in criminal custody." *Ms. L.*, 310 F. Supp. 3d at 1143. The prosecution of Plaintiff Sabillon Paz and placement of Plaintiff A.E.S.E in ORR custody were authorized by federal law and therefore cannot form the basis of an IIED claim.

As to their negligence claims, under Texas law, Plaintiff A.E.S.E cannot bootstrap her claims arising from ORR custody in California to her claims arising from the separation in Texas. *See Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 800 (S.D. Tex. 2019) ("Texas law requires a claim-by-claim choice of law analysis."). Rather, the law of the place of the *injury* generally applies. *See Wright v. C. R. Bard, Inc.*, No. 3:19-CV-2176-S, 2021 WL 2168954, at *3 (N.D. Tex. May 27, 2021). Here, Plaintiffs allege negligence without specifying the negligent conduct, instead stating only that by "engaging in the acts alleged [in the Complaint], the federal officers [referenced in the Complaint] failed to act with ordinary care and breached their duty of

care owed to [Plaintiffs]." Doc. 1, ¶ 169.

Because Plaintiff A.E.S.E. has not plausibly alleged a private person analog for her claims, the Court lacks subject matter jurisdiction over them. *See Brownback v. King*, 141 S. Ct. 740, 750 n.9 (2021).

## III.   CONCLUSION.

For the foregoing reasons, Defendant requests that this action be transferred to the Western District of Texas, or in the alternative, dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney

*/s/ Kimberly Bell 4/15/2022 4/15/2022*
KIMBERLY BELL
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
Kimberly.Bell@usdoj.gov
*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel of record to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Kimberly Bell 4/15/22*
KIMBERLY BELL
Assistant United States Attorney