**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| A.E.S.E., a minor child, and EUSEBIO DANIEL SABILLON PAZ, her father, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:21-cv-00569-RB/GBW |
| UNITED STATES OF AMERICA, | ) ) | **ORAL ARGUMENT REQUESTED** |
| Defendant. | ) ) ) | |

**PLAINTIFFS' FIRST MOTION TO COMPEL INTERROGATORY RESPONSES AND
DOCUMENTS FROM DEFENDANT UNITED STATES OF AMERICA**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND & PROCEDURAL HISTORY ................................................................ 2

ARGUMENT ..................................................................................................................... 6

I.     Defendant Should Be Compelled to Provide All Relevant Information and Documents... 7

     a.    Information and Documents Related to Plaintiffs' Separation and Detention Under the "Zero-Tolerance" Policy are Highly Relevant to Plaintiffs' Claims ..... 7

     b.    Information and Documents Related to Plaintiff A.E.S.E.'s Sexual Abuse while in Government Custody are Highly Relevant to Plaintiffs' Claims.......................... 12

     c.    Information and Documents Related to Mr. Sabillon Paz's Prosecution and Defendant's Decision to Voluntarily Dismiss All Charges are Highly Relevant to Plaintiffs' Claims ................................................................................................ 15

     d.    Information and Documents Related to Defendant's Transfer of Plaintiffs Between Specific Detention Facilities are Highly Relevant to Plaintiffs' Claims 17

     e.    Information and Documents Related to the Contracts, Policies, and Procedures Governing the Facilities where Plaintiffs were Detained are Highly Relevant to Plaintiffs' Claims ................................................................................................ 19

     f.    Defendant Must Produce the Previously Agreed-Upon Common Discovery ...... 22

II.    Defendant's Boilerplate Objections Lack Merit ................................................... 24

     a.    Defendant's Blanket Privilege Assertions are Insufficient ................................... 24

     b.    Defendant's Lack of Possession, Custody or Control Objections are Illogical .... 25

     c.    Defendant Cannot Object that Relevant Discovery is Obtainable from Some Other Source .................................................................................................................. 26

     d.    Defendant's Breadth, Burden, Vagueness, and Ambiguity Objections are Unsubstantiated .................................................................................................... 26

     e.    Defendant's Compound and Containing Subparts Objections are Unfounded .... 27

CONCLUSION .................................................................................................................. 27

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ad Astra Recovery Servs., Inc. v. Heath*,
No. 18-1145-JWB, 2019 WL 2448569 (D. Kan. June 12, 2019) ..............................................7

*Barela v. Safeco Ins. Co. of Am.*,
No. 13-1084 SMV/SCY, 2014 WL 11497826 (D.N.M. Aug. 22, 2014).................................11

*Bhasker v. Kemper Cas. Ins. Co.*,
361 F. Supp. 3d 1045 (D.N.M. 2019) ...................................................................................7

*C&J Equip. Mfg. Corp. v. Grady*,
No. CV 23-99 MV/SCY, 2023 WL 7388866 (D.N.M. Nov. 8, 2023) .........................9, 11, 21

*Ctr. for Biological Diversity v. Norton*,
336 F. Supp. 2d 1155 (D.N.M. 2004) .................................................................................25

*D.J. Simmons, Inc. v. Broaddus*,
No. CIV 99-1105 JP/LFG, 2001 WL 37125080 (D.N.M. July 10, 2001) ........................17, 21

*DeSilva v. Allergan USA, Inc.*,
No. 8:19-CV-01606-JLS, 2020 WL 5947827 (C.D. Cal. Sept. 1, 2020)...............................24

*DuFour v. City of Las Vegas*,
No. CIV. 09-0802 JB/LFG, 2010 WL 965951 (D.N.M. Jan. 28, 2010) ................................26

*Fort Washington Res., Inc. v. Tannen*,
153 F.R.D. 78 (E.D. Pa. 1994)............................................................................................26

*Freddie v. Marten Transp., Ltd.*,
428 F. App'x 801 (10th Cir. 2011) ......................................................................................14

*Heuskin v. D&E Transp., LLC*,
No. CV 19-957 MV/GBW, 2020 WL 1450575 (D.N.M. Mar. 25, 2020).............................27

*Lucero v. Valdez*,
240 F.R.D. 591 (D.N.M. 2007)................................................................................9, 10, 19

*Martinez v. Dep't of Pub. Safety*,
No. CIV 11-0553 LFG/KBM, 2012 WL 13081263 (D.N.M. Feb. 15, 2012) ........................27

*Mohammed v. Holder*,
No. 07-CV-02697-MSK-BNB, 2014 WL 1042309 (D. Colo. Mar. 18, 2014).......................25

*Pruess v. Presbyterian Health Plan, Inc.*,
579 F. Supp. 3d 1235 (D.N.M. 2022) ..................................................................................19

*Robinson v. City of Arkansas City*,
   No. 10-1431-JAR-GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012) .....................................13

*Rogers v. Giurbino*,
   288 F.R.D. 469 (S.D. Cal. 2012) .........................................................................................22

*S2 Automation LLC v. Micron Tech., Inc.*,
   No. CIV 11-0884 JB/WDS, 2012 WL 3656454 (D.N.M. Aug. 9, 2012) .............................21

*Sonnino v. Univ. of Kan. Hosp. Auth.*,
   221 F.R.D. 661 (D. Kan. 2004).............................................................................................7

*Starlight Int'l Inc. v. Herlihy*,
   186 F.R.D. 626 (D. Kan. 1999).....................................................................................14, 19

*United States v. DeLeon*,
   428 F. Supp. 3d 716 (D.N.M. 2019) ....................................................................................25

*Unknown Parties v. Johnson*,
   No. CV-15-00250-TUC-DCB, 2016 WL 8199308 (D. Ariz. July 21, 2016) .........................25

*Walker v. THI of N.M. at Hobbs Ctr.*,
   No. CIV 09-0060 JB RLP, 2010 WL 4929069 (D.N.M. Oct. 20, 2010) ...............................25

**STATUTES AND RULES**

8 U.S.C. § 1325 ...............................................................................................................................15

28 U.S.C. §§ 2671 et seq., Federal Tort Claims Act.................................................................1, 2

28 U.S.C. § 2680 .............................................................................................................................20

FED. R. CIV. P. 26 ............................................................................................................................7

FED. R. CIV. P. 33 ..........................................................................................................................10

FED. R. CIV. P. 34 ..........................................................................................................................24

FED. R. CIV. P. 37 .......................................................................................................................7, 19

**OTHER AUTHORITIES**

DEP'T OF JUSTICE, OFF. OF INSPECTOR GEN., OIG-20-06, DHS LACKED
   TECHNOLOGY NEEDED TO SUCCESSFULLY ACCOUNT FOR SEPARATED MIGRANT
   FAMILIES (Nov. 25, 2019),
   https://www.oig.dhs.gov/sites/default/files/assets/2019-11/OIG-20-06-
   Nov19.pdf ...........................................................................................................................8

Philip Bump, *Here Are the Administration Officials Who Have Said That Family Separation Is Meant as a Deterrent*, WASH. POST (June 19, 2018 12:14 p.m.) .......................7

Plaintiffs Eusebio Daniel Sabillon Paz and his minor daughter, A.E.S.E., move the Court to enter an Order compelling Defendant United States of America (hereinafter "Defendant," "USA" or "the Government") to provide fully responsive answers to Plaintiffs' First Set of Interrogatories and Requests for Production ("RFPs"). This motion is necessitated by Defendant's incomplete answers and objections to Plaintiffs' discovery requests.[1] The parties met and conferred in a good faith effort to resolve these disputes prior to the filing of this motion to compel but were unable to reach an agreement. In support thereof, Plaintiffs state as follows:

## INTRODUCTION

Plaintiffs came to the United States as asylum seekers in search of safety. Instead, upon reaching U.S. soil, Mr. Sabillon Paz was forcibly separated from his then-seven-year-old daughter, A.E.S.E., pursuant to the Government's then-operative "zero-tolerance" family separation policy. Plaintiffs were taken into U.S. custody, detained in inhumane conditions, and forced to endure a lengthy separation and cruel mistreatment at the hands of U.S. personnel. Plaintiffs seek to hold the Government accountable for these abuses and injuries under the Federal Tort Claims Act.

Plaintiffs move the Court to compel the Government to provide several categories of documents and information that are highly relevant to Plaintiffs' claims. Specifically, Plaintiffs seek information and documents related to the Government's decision to separate and detain Plaintiffs at certain facilities; the sexual abuse A.E.S.E. suffered in Government custody; the

---

[1] Plaintiffs note that on November 30, 2023 at 12:45pm MT they received notification that Defendant had uploaded additional responsive documents to its file sharing platform. Shortly thereafter, Defendant notified Plaintiffs by email that the production did not load properly and needed to be readded to the platform. Because Plaintiffs are awaiting receipt of Defendant's production on the same day as Plaintiffs' deadline to file this motion to compel, and because Plaintiffs' review of the supplementation Defendant has provided so far has not resolved the issues with Defendant's responses to Plaintiffs' requests, Plaintiffs are filing the present motion. Plaintiffs commit to reviewing Defendant's production as soon as it is available and will notify the Court and amend this motion should the production moot the need to compel further responses to any of Plaintiffs' requests.

Government's prosecution and voluntary dismissal of criminal charges against Mr. Sabillon Paz; the Government's failure to promptly reunify Plaintiffs once the charges against Mr. Sabillon Paz were dropped; the Government's tracking and transfer of Plaintiffs between various detention facilities; the contracts, policies, and procedures governing the operations of the facilities where Plaintiffs were detained; and certain common policy-level discovery involving the development and implementation of the "zero tolerance" policy.

Plaintiffs move to compel the production of these relevant documents and information because the Government's responses to date are insufficient (and for some requests incoherent), and because the Government's broadly asserted relevance, burden, and privilege objections, among others, lack merit. The Government cannot properly withhold these documents and information, as they relate to Plaintiffs' separation and detention under the "zero-tolerance" policy, exactly the events that gave rise to Plaintiffs' claims. Further, the Government has repeatedly delayed providing responses to Plaintiffs' requests, even where the Government has expressly stipulated to provide certain discovery. Without the highly relevant documents and information Plaintiffs request, and the Government's prompt response to Plaintiffs' outstanding discovery requests, Plaintiffs will be prejudiced in their ability to effectively present and pursue their case.

## BACKGROUND & PROCEDURAL HISTORY

In May 2018, Plaintiffs fled Honduras for the United States to escape escalating political violence against Plaintiffs and their family on account of Mr. Sabillon Paz's activism. Compl. ¶ 1-2, ECF No. 1. Plaintiffs surrendered themselves after crossing the U.S.-Mexico border only to be aggressively detained by Government agents who forcibly separated Plaintiffs and sent them to detention facilities where they endured further abuse and mistreatment until their release nearly two months later. *Id.* ¶¶ 4-9. The Government's deliberate misconduct inflicted substantial harm on Plaintiffs, who continue to experience physical and emotional injuries on account of the traumas

they endured while in Government custody. *Id.* ¶ 9.

On June 18, 2021, Plaintiffs filed their Complaint and commenced this action, asserting claims against the Government for intentional infliction of emotional distress, negligence, medical negligence, negligent supervision, abuse of process, assault and battery, conversion, and breach of fiduciary duty under the Federal Tort Claims Act. *Id.* ¶¶ 141-183. In its answer, Defendant admitted to the existence of the "zero-tolerance" policy and Plaintiffs' separation and detention, Answer ¶¶ 5, 9, ECF No. 62, and it asserted nineteen affirmative defenses, *id.* at 34-38. Defendant also moved for partial dismissal of Plaintiffs' claims, ECF No. 31, but the Court denied Defendant's motion as to all but one of Plaintiffs' claims. ECF No. 58.

On November 8, 2022, the parties submitted a Joint Status Report proposing a discovery plan with a 90-day document disclosure period from November 29, 2022 to February 27, 2023. ECF No. 61 at 7. As discussed at the initial scheduling conference on November 29, 2022, the purpose of the 90-day disclosure period was to allow for more targeted and streamlined discovery, with each party stipulating that it would produce certain relevant and easily accessible categories of documents. Defendant stipulated that it would produce: "(1) the policy-related common-discovery documents that it produced in *C.M. v. United States*, Civil Action No. 19-cv-05217-PHX SRB (D. Ariz.) and *A.P.F. v. United States*, Civil Action No. 2:20-cv-00065-PHXSRB (D. Ariz.) that are not specific to the plaintiffs in those actions; and (2) documents within the possession, custody, or control of the United States government that specifically relate to Plaintiffs in this case, relevant to the facts as alleged in the Complaint, including each Plaintiff's Alien File ("A-File"), Plaintiff A.E.S.E.'s ORR custody records,[2] and, for each Plaintiff, his/her I-213s,

---

[2] "ORR" is a reference to the Department of Health and Human Services' ("HHS") Office of Refugee Resettlement. Children separated from their parents under the "zero-tolerance" policy were transferred to the care and custody of ORR.

subject activity logs, and any transfer or detention records." *Id.*

Even though much of Defendant's stipulated productions were to include documents already produced in other litigations, Defendant did not make its first stipulated common discovery production until February 27, 2023, the date the 90-day disclosure period was scheduled to close. Cert. Serv., ECF No. 83. Defendant did not represent that it had completed its rolling productions of policy-related common discovery until March 29, 2023, one month after the close of the 90-day disclosure period. ECF No. 93. Shortly thereafter, Plaintiffs informed Defendant that its stipulated productions appeared not to include all the agreed-upon plaintiff-specific discovery. Over the following weeks, and in response to six requests from Plaintiffs, Defendant made additional stipulated productions through late April 2023. *See, e.g.*, Certs. Serv., ECF Nos. 95, 100, 106. Still, Defendant's stipulated productions appeared to be missing documents. Because of these deficiencies and delays, the parties amended the pre-trial schedule. ECF No. 94 (Clerk's minutes from Mar. 29, 2023 status conference discussing United States' outstanding discovery and extending the pre-trial deadlines), at 2; ECF No. 98 (Order granting stipulated 30-day extension of pre-trial deadlines).

On May 4, 2023, Plaintiffs sent Defendant a letter outlining the apparent deficiencies in Defendant's stipulated productions. Declaration of Tara M. Brailey, Ex. 1.[3] Defendant did not provide a written response to Plaintiffs' letter, but during a meet and confer call on May 23, 2023, the parties discussed the issues Plaintiffs raised and agreed that, in lieu of Plaintiffs filing a motion to compel, Plaintiffs would be permitted to serve five additional interrogatories and RFPs seeking information about the common discovery, for a total of 30 interrogatories and 25 RFPs. *See* ECF No. 66 (setting initial limits on discovery requests at 25 interrogatories and 20 RFPs). Plaintiffs

---

[3] All referenced Exhibits are attached to the concurrently filed Declaration of Tara M. Brailey.

confirmed this understanding via email that same day, May 23, 2023, and counsel for the Government indicated his consent—and the fact that he "still owes Plaintiffs a response to the letter they sent," during a May 24, 2023 status conference. ECF No. 110 (Clerk's Minutes of May 24, 2023 Status Conference), at 2.

On June 28, 2023, Plaintiffs served their First Set of Interrogatories and RFPs on Defendant. Cert. Serv., ECF No. 121; Ex. 2 (Plaintiffs' First Set of Interrogatories and First Set of Requests for Production of Documents to Defendant United States of America). On July 25, 2023, Defendant requested a 30-day extension. Plaintiffs granted the request, noting that several requests were seeking information Defendant had already agreed to produce during the 90-day disclosure period, which remained outstanding after several months. On August 28, 2023, the date its responses were due, Defendant requested an additional extension. Plaintiff granted Defendant until September 1, 2023 to provide its responses and objections. On September 1, 2023, Defendant served its responses and objections to Plaintiffs' first set of requests. Cert. Serv., ECF No. 133; Ex. 3 (Defendant's Response to Plaintiffs' First Set of Interrogatories); Ex. 4 (Defendant's Objections and Response to Plaintiffs' First Set of Requests for Production of Documents). Several of Defendant's responses, in the first instance, stated only that "Defendant will supplement."[4]

On October 11, 2023, the parties met and conferred to discuss the status of outstanding discovery and the pre-trial schedule. In an email after this discussion dated October 20, 2023, Defendant represented that it intended to supplement its responses to Plaintiffs' first set of requests on or before November 17, 2023. Again, the parties amended the pre-trial deadlines to account for the Government's delay in providing discovery. ECF No. 153 (Clerk's minutes from Nov. 1, 2023 status conference); ECF No. 152 (Order granting stipulated request for 3-month extension of pre-

---

[4] *See, e.g.*, Ex 3 at 20 (Defendant's response to Interrogatory No. 20).

trial deadlines).

On November 14, 2023, Plaintiff sent Defendant a detailed letter outlining all apparent deficiencies in Defendant's responses and objections to Plaintiffs' first set of requests and asked for a written response by November 22, 2023. Ex. 5.[5]  Plaintiffs met and conferred again on November 17, 2023, at which time Defendant represented that a written response and the production of additional documents was imminent. Plaintiff did not receive any written response until close of business on November 29, 2023, the day before the deadline for the present motion, at which time Defendant served supplemental responses to some of Plaintiffs' requests. Ex. 6 (Defendant's Supplemental Response to Plaintiffs' First Set of Interrogatories); Ex. 7 (Defendant's [Supplemental] Objections and Response to Plaintiffs' First Set of Requests for Production of Documents); Ex. 8 (Email from Defendant discussing supplementation). On November 29, 2023, Defendant indicated it was in the process of uploading the supplemental production to its file sharing platform for Plaintiffs' access. On November 30, 2023, Defendant notified Plaintiffs' counsel that documents had been uploaded to the file sharing platform, but because they did not load properly the production would need to be reloaded.  Plaintiffs will promptly review the produced documents whenever they become available, but based on a preliminary review of the supplementation Defendant has provided to date, the additional information provided is minimal and does not resolve Plaintiffs' issues with Defendant's responses, necessitating the present motion.

## ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

---

[5] Plaintiffs' November 14, 2023 letter effectively previewed for the Government the issues Plaintiffs raise in the present motion. Plaintiffs use the present motion to compel production regarding the most significant issues with Defendant's responses, but Plaintiffs include the letter for reference given its granular discussion of relevant issues.

party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Information within the scope of discovery "need not be admissible in evidence to be discoverable." *Id.* Rather, "[w]hen the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections." *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *2 (D. Kan. June 12, 2019). "The party resisting discovery does not carry this burden by asserting 'conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad.'" *Id.* (quoting *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004)).

If a party does not respond to an interrogatory or to a request for production, a party may "move for an order compelling disclosure or discovery" after noticing the other parties and making a good faith effort to confer with the party who has failed to provide the discovery. FED. R. CIV. P. 37(a)(1); *see also Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1120 (D.N.M. 2019). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." *Bhasker*, 361 F. Supp. 3d at 1120 (alteration in original) (citing FED. R. CIV. P. 37(a)(4)).

**I.     Defendant Should Be Compelled to Provide All Relevant Information and Documents**

**a.  Information and Documents Related to Plaintiffs' Separation and Detention Under the "Zero-Tolerance" Policy are Highly Relevant to Plaintiffs' Claims**

It is undisputed that the Government designed the "zero-tolerance" policy to inflict trauma on asylum-seeking families like Plaintiffs and to deter Central American families from seeking asylum in the United States.[6]  It is also undisputed that the Government understood the risks and

---

[6] Philip Bump, *Here Are the Administration Officials Who Have Said That Family Separation Is Meant as a Deterrent*, WASH. POST (June 19, 2018 12:14 p.m.),

the likely effect the policy would have when implemented, and that Plaintiffs were separated and detained while this policy was in effect.[7] Answer ¶¶ 5, 20. In their Complaint, Plaintiffs allege that they suffered severe harms as a result of this policy. *See generally* Compl. More specifically, Plaintiffs assert that during their separation and detention, the Government:

- Physically abused Mr. Sabillon Paz and failed to provide A.E.S.E. with necessary medical care upon their apprehension at the border. *Id.* ¶¶ 30-32.

- Forcibly separated Mr. Sabillon Paz from his then-seven-year-old daughter and kept Plaintiffs detained in separate facilities for nearly two months. *Id.* ¶¶ 42-43.

- Attempted to coerce Mr. Sabillon Paz to abandon his ultimately meritorious asylum claim. *Id.* ¶¶ 65-66.

- Initially failed to treat and subsequently inadequately treated Mr. Sabillon Paz's excruciatingly painful kidney stones. *Id.* ¶¶ 57, 74-78.

- Failed to release A.E.S.E. to her approved custodian grandparents and instead continued to detain her for over six weeks. *Id.* ¶¶ 87-89.

- Failed to return Mr. Sabillon Paz's personal property upon his release from Government custody. *Id.* ¶ 33.

- Subjected Plaintiffs to abusive conduct and unsanitary conditions for the duration of their detention. *Id.* ¶¶ 34-41.

Discovery on the Government's decision to separate and detain Plaintiffs, and consequences attendant thereto, is plainly relevant to the allegations listed above, especially considering Plaintiffs have tailored their requests to seek information and documents that focus on *Plaintiffs* and their experience in Government custody.

Despite the clear relevance of Plaintiffs' requests to their claims, Defendant has provided

---

https://www.washingtonpost.com/news/politics/wp/2018/06/19/here-are-the-administration-officials-whohave-said-that-family-separation-is-meant-as-a-deterrent/.

[7] DEP'T OF JUSTICE, OFF. OF INSPECTOR GEN., OIG-20-06, DHS LACKED TECHNOLOGY NEEDED TO SUCCESSFULLY ACCOUNT FOR SEPARATED MIGRANT FAMILIES (Nov. 25, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-11/OIG-20-06-Nov19.pdf.

only partial and insufficient responses to many of Plaintiffs' requests. For instance, in response to Interrogatory No. 8, which asks the Government to identify personnel who interacted with Plaintiffs during their detention and the supervisors of those personnel, Defendant lists several U.S. Border Patrol agents, U.S. Immigration and Customs Enforcement ("ICE") officers, and one HHS employee, but it fails to identify the supervisors of the listed ICE and HHS personnel, fails to identify any medical personnel, fails to list all persons involved in A.E.S.E.'s care while she was detained at the Clint, Ysleta, and El Paso Border Patrol Stations (*e.g.*, the social worker who is known to have assisted Plaintiff A.E.S.E. in reuniting with her grandparents), and fails to specify the personnel who were involved in Mr. Sabillon Paz's detention in U.S. Marshals Service ("USMS") custody or at the Otero County Processing Center ("OCPC"), among other deficiencies. *See* Ex. 6 at 8-11. Plaintiffs need this information to make efficient use of their 15 allotted depositions. Because the United States presumably maintains shift schedules for all locations where Plaintiffs were detained, it should be able to provide a more comprehensive list of personnel. Otherwise, to the extent such records no longer exist, or if it is Defendant's position that certain categories of requested personnel did not interact with Plaintiffs, Defendant should so state. *See C&J Equip. Mfg. Corp. v. Grady*, No. CV 23-99 MV/SCY, 2023 WL 7388866, at \*9 (D.N.M. Nov. 8, 2023) (granting motion to compel a response to an interrogatory and holding that if defendant "has no responsive information, he should specifically say so").

As another example, in response to Interrogatory No. 15, which asks Defendant to describe the medical care Mr. Sabillon Paz received between May 15, 2018 and June 22, 2018, the Government fails to identify any relevant medical provider by name and broadly refers Plaintiffs to all documents ICE has produced for information about the medical care Mr. Sabillon Paz received while detained in ICE custody. *See* Ex. 6 at 18. Defendant has not provided a complete response, and portions of its response flout the guidance of relevant case law. *See Lucero v. Valdez*,

240 F.R.D. 591, 595 (D.N.M. 2007) ("While a party may produce records in lieu of answering an interrogatory, Rule 33(d) requires the party to identify the document in sufficient detail that will allow the other party to locate it.").

And, similarly, in response to RFP No. 2, Defendant again ignores portions of Plaintiffs' requests and makes an improperly narrow offer of production. *See* Ex. 7 at 2-4. Defendant states that HHS will produce all documents located after a search of the records of the ORR Federal Field Specialist, Federal Field Specialist Supervisor, and Project Officers who were involved with A.E.S.E.'s care at David & Margaret Youth and Family Services ("David & Margaret"), but Defendant's limitation entirely ignores both responsive documents regarding Mr. Sabillon Paz, who was never detained at David & Margaret, and A.E.S.E.'s time spent in detention at other facilities. *See id.* Defendant's answer to this RFP also refers Plaintiffs to all documents produced by ICE and reports that ICE "requests the complete names for any additional ICE officers subject to this request and a clear delineation of which officers worked for ICE." *Id.* It is improper for Defendant to direct Plaintiffs to a wide swath of produced documents, *see Lucero*, 240 F.R.D. at 595, and it is unreasonable for Defendant to request that *Plaintiffs* provide *ICE* with the names of its own officers in order to fully respond to this request. Plaintiffs have done their best to ease the burden on Defendant by culling names of government personnel from records already received and listing those names as possible custodians in this RFP, but more specific information about Government personnel is obviously more accessible to the United States than it is to Plaintiffs.

The above examples are illustrative of the issues Plaintiffs have encountered in Defendant's responses to requests seeking information about Plaintiffs' separation and subsequent detention. Additional requests in this category that also suffer from incomplete responses include:

- **Interrogatory No. 6 / RFP No. 11**, which seek facts, documents and witnesses that support the affirmative defenses Defendant asserted in its answer. Defendant responded that it "may subsequently supplement" its response to the interrogatory and cited three

documents related to Mr. Sabillon Paz's criminal proceeding—without any context as to why these three documents are relevant—in response to the RFP. *See* Ex. 3 at 6-7; Ex. 4 at 8-9. To further facilitate responses to these requests, Plaintiffs clarified in their November 14, 2023 letter that for Interrogatory No. 6 they seek a response setting forth a description of only the "material" or "principal" facts, documents, and/or witnesses that support each of its affirmative defenses. Ex. 5 at 9; *see also Barela v. Safeco Ins. Co. of Am.*, No. 13-1084 SMV/SCY, 2014 WL 11497826, at *8 (D.N.M. Aug. 22, 2014) ("Court will limit the request. Defendant is ordered to provide the 'material' or 'principal' facts that support each of its Affirmative Defenses."). On November 29, 2023, Defendant indicated it "will supplement this response to include a description of material or principal facts, documents, and witnesses; that it will produce any identified documents; which will explain the significance of the three documents cited in the current response to RFP No. 11," Ex. 8, but gave no indication of when Plaintiffs can anticipate receiving this supplementation.

- **Interrogatory No. 9 / RFP No. 13**, which ask the Government to identify all personnel involved in the decision to separate Plaintiffs, all reasons for that decision, all reasons for the decision not to reunify Plaintiffs when charges against Mr. Sabillon Paz were dropped, and related documents. Defendant ignores the request to identify personnel and references no documents other that Plaintiffs' I-213s, A-Files, A.E.S.E.'s UAC Case File—formulaic immigration paperwork that is insufficient to fully respond to this request—and the common discovery, which totals more than 50,000 pages and contains nothing specific to Plaintiffs. *See* Ex. 3 at 11-12; Ex. 4 at 10-11. Defendant's purported supplementation of this interrogatory response involved only changes to naming conventions. *See* Ex. 6 at 12-13. Such responses are insufficient.

- **Interrogatory No. 11**, which seeks information about the Government's decision to continue to detain A.E.S.E. in ORR custody despite the existence of an appropriate sponsor, her grandfather. Defendant responds by simply restating the dates of A.E.S.E.'s custody and release; there is no responsive explanation. Ex. 3 at 13-14. Defendant stated on November 29, 2023: "See Supplemental responses and Defendant will continue to supplement as information becomes known," Ex. 8, but this response was not supplemented. *Compare* Ex. 3 at 13-14 *with* Ex. 6 at 14-15. Defendant must provide a complete response.

- **Interrogatory No. 17 / RFP No. 15**, which seek documents provided or shown to Plaintiffs by the Government during Plaintiffs' custody, such as documents related to voluntary deportation, and information about who provided such documents to Plaintiffs. Defendant refers only to Plaintiffs' A-files and A.E.S.E.'s UAC Case File, ignoring documents that Plaintiffs may have been presented with and never signed, and failing to identify any relevant personnel. *See* Ex. 3 at 17-18; Ex. 4 at 11-12. Defendant should either provide a complete response, or, if it is taking the position that no additional responsive materials exist, so state. *See C&J Equip. Mfg. Corp.*, 2023 WL 7388866, at *9. On November 29, 2023, Defendant stated: "Defendant will need to supplement at this time." Ex. 8.

- **RFP No. 5**, which requests that the Government remove redactions on Plaintiff-specific documents. Defendant initially responded, "Defendant will supplement." Ex. 4 at 4-5. Defendant's supplemental response indicates there are updated versions of two of the five listed categories of documents with redaction issues. Ex. 7 at 4-5. Plaintiffs have yet to receive access to the updated documents, and Defendant gives no indication whether it will supplement the remaining categories of Plaintiff-specific documents.

- **RFP No 6**, which seeks documents and communications related to Mr. Sabillon Paz's money and personal property that was never returned. Defendant's initial response directed Plaintiffs to a few produced documents, Ex. 4 at 5, none of which reflected the ultimate disposition of the property. Defendant's supplemental response now refers to "the disposition documents," Ex. 7 at 5, but Plaintiffs had not yet received access to these documents to confirm whether Defendant has provided a complete response.

For the aforementioned reasons, the Court should compel Defendant to provide complete responses to Plaintiffs' Interrogatories Nos. 6, 8, 9, 11, 15, and 17, and RFP Nos. 2, 5, 6, 11, 13, and 15, requests that seek highly relevant documents and information related to Plaintiffs' separation and detention and that bear directly on Plaintiffs' claims.

### b. Information and Documents Related to Plaintiff A.E.S.E.'s Sexual Abuse while in Government Custody are Highly Relevant to Plaintiffs' Claims

After the Government separated A.E.S.E. from her father, she was transferred to a U.S. Customs and Border Protection ("CBP") facility in Clint, Texas. Compl. ¶ 79. Government documents indicate that while A.E.S.E. was in CBP custody, she was transferred between CBP facilities for a shower at the El Paso Station. *See* Ex. 5 at 16, 18. In the shower room, a woman rubbed A.E.S.E.'s stomach and attempted to touch her genitals; A.E.S.E. pushed the woman's hand away. Compl. ¶¶ 82-83. The woman became angry and threatened A.E.S.E. that if she ever told anyone about what happened, she would never see her parents again. *Id.* ¶ 84. A.E.S.E. then witnessed the woman undress and sexually molest two young girls who were in the shower room with A.E.S.E. *Id.* ¶ 85. To this day, A.E.S.E. is severely traumatized by this event, which forms the basis of several of her claims against the United States. *Id.* ¶ 86. Any documents or information that relate to these allegations are highly relevant and necessary to this case.

Despite this, the Government's responses to requests seeking documents and information about Plaintiff A.E.S.E.'s sexual abuse are incomplete, and in a few places entirely evasive. For example, in response to Interrogatory No. 13, which primarily requests that the Government identify each CBP agent or other adult who was physically present at the El Paso Station at any time over the two-day period in which A.E.S.E. is believed to have been present in the facility for a shower, Defendant initially responded only that "the minor Plaintiff was not held at El Paso Station on June 2 or June 3, 2018." Ex. 3 at 14-15.[8] Defendant continues to offer the same answer in response to RFP No. 19, which seeks a map of the El Paso Station as it existed during the relevant time period. Ex. 7 at 14. These evasive responses are deficient, as the United States' own documents show A.E.S.E. being transported to and from the El Paso Station for a shower. A.E.S.E. may not have been "held" at the El Paso Station, but her documented presence at that facility and the seriousness of this allegation warrant the United States conducting a more careful and fulsome search for responsive information. *See Robinson v. City of Arkansas City*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) ("To adequately respond to a request for production, the respondent must conduct a reasonable search for responsive documents.") (internal quotations and citation omitted).

Additional requests in this category that also suffer from incomplete responses include:

- **RFP No. 1,** which seeks documents and communications regarding any investigations into A.E.S.E.'s sexual abuse conducted by the Department of Justice, Department of Homeland Security, the FBI, or local law enforcement. Defendant responds by referring Plaintiffs to Plaintiffs' A-Files, which contain no information about the investigation of allegations of sexual abuse. *See* Ex. 7 at 1-2. Notably, Defendant does not even direct Plaintiffs to the one document it has produced that is responsive to this request, a report prepared by CBP. Defendant should supplement this response.

---

[8] Defendant has now supplemented its response to Interrogatory No. 13 to include the names of CBP agents on duty at the El Paso Station on June 2-3, 2018, but Defendant continues to ignore the portion of the request that asks whether the Government ever conducted any background checks on the identified persons. Ex. 6 at 16-17.

- **RFP No. 20**, which seeks all audio or video recordings created or produced at the Border Patrol stations where A.E.S.E. was present prior to and including the time of her alleged assault. Defendant responds that CBP has no audio or video recordings in its possession that are responsive to this request, but Defendant's response does not indicate whether the recordings ever existed or whether some other government agency may be in possession of the requested recordings. *See* Ex. 7 at 15. Defendant should clarify so Plaintiffs can assess the completeness of this response. *See Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 642 (D. Kan. 1999) (finding request for clarification reasonable where it was unclear whether the statement "[n]o additional documents to produce" meant the party had no responsive documents or was instead refusing to produce documents on some unidentified basis).

- **RFP No. 21**, which seeks documents containing photographs and/or physical descriptions of all United States personnel present at the two Border Patrol stations between which A.E.S.E. was transferred for a shower. In response, Defendant refers Plaintiffs to a previously produced report and its responses to Interrogatories Nos. 8 and 13, which include the names of relevant Government personnel, but this answer ignores the request for photographs or physical descriptions of identified personnel. *See* Ex. 7 at 15. Defendant should supplement, and if it is not able to provide photographs or physical descriptions, which are seemingly discernible from identification photos, it should explain why.

- **Interrogatory No. 4 / RFP No. 9,** which seek all documents and communications regarding any investigations the Government conducted into A.E.S.E.'s sexual abuse claim. Defendant responds that HHS is conducting a search for responsive documents and that its investigation is ongoing, and it directs Plaintiffs to a report prepared by the CBP Office of Professional Responsibility ("OPR"), which investigated A.E.S.E.'s claim. Ex. 6 at 4-5; Ex. 7 at 7. Defendant gives no indication of when Plaintiffs will receive a response from HHS, whether its supplementation will include the entirety of the CBP OPR report,[9] and whether the Government's search for responsive material extends beyond HHS and CBP. Because requests for documents and information related to a specific individual's sexual abuse are quite narrow, Defendant's failure to provide a complete response calls into question the thoroughness of its efforts to search for responsive information. *See Freddie v. Marten Transp., Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011) ("The withholding of evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.") (internal citation and quotations omitted).

- **Interrogatory No. 12 / RFP No. 14**, which request documents and communications regarding policies, practices, procedures, or training applicable to CBP officers or Border Patrol agents caring for separated children, including any documents or information regarding bathing children in Government custody or the prevention of

---

[9] For example, Defendant fails to mention or produce a responsive DVD that Plaintiffs understand contains the video and/or audio of a forensic interview the Government conducted of A.E.S.E. Plaintiffs are aware of the existence of this DVD because a photograph of an envelope containing a DVD is included as an exhibit to the CBP OPR report.

sexual abuse of children in Government custody. In response, Defendant refers Plaintiffs to specific Bates ranges, but does not indicate whether the referenced documents, which predate A.E.S.E.'s sexual abuse, were the policies in effect at the time of her abuse. *See* Ex. 6 at 15-16; Ex. 7 at 11. Defendant should clarify so Plaintiffs can assess the completeness of this request.

Because the sexual abuse A.E.S.E. suffered after U.S. personnel forcibly separated her from her father is central to the claims at issue in this case, and Plaintiffs' requests seek documents and information highly relevant to understanding which U.S. personnel may have been involved in or aware of these allegations, the Court should compel Defendant to provide complete responses to Plaintiffs' Interrogatories Nos. 4, 12, and 13 and RFP Nos. 1, 9, 14, 19, 20, and 21.

   **c. Information and Documents Related to Mr. Sabillon Paz's Prosecution and Defendant's Decision to Voluntarily Dismiss All Charges are Highly Relevant to Plaintiffs' Claims**

Mr. Sabillon Paz was charged under 8 U.S.C. § 1325(a)(1) with the misdemeanor crime of improper entry by a noncitizen. Compl. ¶ 47. On June 21, 2018, all charges against Mr. Sabillon Paz were voluntarily dismissed, but Plaintiffs were not reunited until July 19, 2018, approximately 50 days after federal officials first separated Plaintiffs. *Id.* ¶¶ 48, 103. Plaintiffs seek discovery into the reasons for the decisions to prosecute, and then to dismiss the prosecution of Mr. Sabillon Paz, as understanding why the Government made these decisions and how they factored into the delay in reunifying Plaintiffs is highly relevant to Plaintiffs' claims for intentional infliction of emotional distress, negligence, and abuse of process. Defendant's responses to Plaintiffs' requests seeking this category of information, however, are incomplete and evasive.

Through Interrogatory No. 7 and RFP No. 12, Plaintiffs seek information and documents about the circumstances of Mr. Sabillon Paz's prosecution. Ex. 2 at 9, 18. In response, Defendant broadly describes the referral for prosecution process and identifies the AUSA that accepted the prosecution, Ex. 3 at 7-8; Ex. 4 at 9-10, but in its supplemental interrogatory response Defendant adds that "[h]e, however, did not prosecute the matter." Ex. 6 at 8. Defendant does not identify

any other relevant agents, unit supervisors, or decisionmakers. *See* Ex. 6 at 8; Ex. 7 at 9-10. Defendant also refers Plaintiffs to the produced I-213s, A-Files, A.E.S.E's UAC Case File, and the Common Discovery, yet these documents are nothing more than general immigration records that say nothing about the decision to subject Mr. Sabillon Paz to criminal prosecution, or general policy documents that do not discuss Mr. Sabillon Paz at all. Defendant's supplemental response to RFP No. 12 indicates CBP has no responsive documents relating to the decision to refer Mr. Sabillon Paz for prosecution, but Defendant says nothing about its efforts to conduct a similar search for documents across other government agencies. Ex. 7 at 10.

Defendant gives a similarly evasive answer to Interrogatory No. 10, which asks that the Government identify persons responsible for failing to reunify A.E.S.E. with her father after the criminal charges against him were voluntarily dismissed. Ex. 2 at 10. In response, Defendant denies that it failed to reunify Plaintiffs, and simply recounts tangentially related facts and dates, such as the timeline of A.E.S.E.'s transfer out of CBP custody, the identification of A.E.S.E.'s grandfather as a sponsor and the date his sponsorship assessment was submitted, the date parentage of A.E.S.E. was confirmed, and the date Plaintiffs were ultimately reunified. Ex. 6 at 13-14. Defendant ignores the crux of this request, which seeks an *explanation* why A.E.S.E. was not reunified with her father when the charges against him were voluntarily dismissed on or around June 21, 2018, and why their reunification was delayed until July 19, 2018.

Lastly, in response to RFP No. 8, which seeks the documents and communications of two custodians with a known connection to Mr. Sabillon Paz's prosecution, Defendant answers that no records other than the public court docket were located, and again recounts basic undisputed facts, such as that the United States Attorney's Office declined to prosecute Mr. Sabillon Paz. Ex. 7 at 6-7. Because Plaintiffs are not simply seeking confirmation that the United States ultimately declined to prosecute Mr. Sabillon Paz, but rather documents and communications that clarify how

and why the United States first decided to prosecute Mr. Sabillon Paz and how and why the United States later decided to voluntarily dismiss all criminal charges against him, Defendant's responses to this and the other requests relating to this subject are incomplete. *See D.J. Simmons, Inc. v. Broaddus*, No. CIV 99-1105 JP/LFG, 2001 WL 37125080, at *5 (D.N.M. July 10, 2001) ("An evasive or incomplete response to a discovery request is equivalent to no response at all.").

Because the prosecution and dismissal of criminal charges against Mr. Sabillon Paz resulted in both Plaintiffs enduring more time in Government custody, and thus more mistreatment, documents and information on this subject are highly relevant to Plaintiffs' claims. The Court should compel Defendant to provide complete responses to Plaintiffs' Interrogatories Nos. 7 and 10 and RFP Nos. 8 and 12.

### d. Information and Documents Related to Defendant's Transfer of Plaintiffs Between Specific Detention Facilities are Highly Relevant to Plaintiffs' Claims

Plaintiffs allege that the Government failed to adequately track Plaintiffs while they were separated and transferred between detention facilities, resulting in prolonged periods during which Plaintiffs were unable to contact one another, and exacerbating the effects of the traumas Plaintiffs suffered. Compl. ¶ 44. Mr. Sabillon Paz also alleges that on or about June 22, 2018, federal authorities transferred him to OCPC in Chaparral, New Mexico, a process that was abusive, painful, and traumatic. *Id.* ¶ 52. Mr. Sabillon Paz and other men on the bus to OCPC were unnecessarily and forcibly chained, shackled, and left outside on the bus in the sweltering summer heat while they awaited intake at OCPC. *Id.* ¶¶ 54-56. During the transfer process, Mr. Sabillon Paz also suffered extreme abdominal pain due to kidney stones, and his requests for medical assistance were denied. *Id.* ¶ 57. Accordingly, Plaintiffs seek discovery related to Plaintiffs' transfer and transportation between the various detention facilities where they were held, as such discovery relates to, at a minimum, Plaintiffs' claims for negligence and medical negligence.

Plaintiffs' requests for discovery on the topic of Plaintiffs' transfers between facilities are straightforward, yet Defendant fails to provide coherent and comprehensive responses. For example, Interrogatory No. 14 requests that the Government identify each and every company, entity, and/or person involved in transporting Plaintiffs, together or separately, at any time while Plaintiffs were in the United States' custody, and in response Defendant refers Plaintiffs to its response to Interrogatory No. 8 and states that A.E.S.E.'s UAC Case File reflects that a David and Margaret Youth Family Services Case Manager released A.E.S.E. to an ICE agent on July 19, 2018, and that a specific company transported Mr. Sabillon Paz from El Paso to OCPC on June 22, 2018. Ex. 6 at 15-16. This response is incomplete on its face because it only covers a single transfer of each Plaintiff, ignoring that Plaintiffs were transported, together and separately, numerous times in Defendant's custody.

Similarly, with respect to RFP No. 7, which seeks all contracts or agreements between the United States and all entities or persons involved in transporting Plaintiffs at any time while they were in government custody, Defendant only refers Plaintiffs to two overarching agreements: (1) a contract between ORR and David & Margaret, which operated a facility where A.E.S.E. was detained, and (2) contracts between the United States and Global Precision Systems, LLC, which transported Mr. Sabillon Paz from El Paso, Texas to OCPC on June 22, 2018. Ex. 7 at 6. Again, the United States provides a partial response that fails to consider the multiple times A.E.S.E. was transferred between CBP facilities and a hospital before entering David & Margaret's care, Mr. Sabillon Paz's transport between CBP and USMS facilities before being transferred to OCPC, and Plaintiffs' transfer to the location where they were finally reunited.

Additional requests in this category that also suffer from incomplete responses include:

- **Interrogatory No. 5 / RFP No. 10**, which request all documents and communications regarding the United States' efforts to track Plaintiffs as a family unit, to facilitate communication between Plaintiffs, and to reunify Plaintiffs between and including

May 15, 2018, and July 31, 2018. Defendant responds by referring Plaintiffs to various documents, including Plaintiffs' A-Files, A.E.S.E.'s UC Portal Intake page and UAC Case File, and tens of thousands of pages of policy-level common discovery unspecific to Plaintiffs. *See* Ex. 6 at 5-6; Ex. 7 at 8. Defendant also states that "ICE herein produces copies of its EARM records," but no such records were found in the production accompanying Defendant's responses and objections. *See* Ex. 7 at 8. Defendant should supplement and clarify this response. *See Starlight Int'l Inc.*, 186 F.R.D. at 642 (finding it reasonable for party propounding discovery to request clarification of an opposing party's discovery response).

- **Interrogatory No. 16**, which asks that the Government describe all facts, circumstances, and witnesses involved in the decision to medically clear Mr. Sabillon Paz for transfer to OCPC and accommodate his medical needs, or, if no such accommodations were made, to so state. In response, Defendant answered that "ICE produced all medical records pertaining to Mr. Sabillon Paz in its possession. ICE has no additional information responsive to this request." Ex. 6 at 19. Defendant's response is unresponsive and unhelpful in that it fails to provide any description or identify any witnesses, impermissibly directing Plaintiffs to all documents ICE has previously produced. *See Lucero*, 240 F.R.D. at 595.

Without further explanation or representations that no additional responsive materials exist, Defendant's partial responses are insufficient. *See Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235, 1240 (D.N.M. 2022) ("[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." (citing FED. R. CIV. P. 37(a)(4))). The documents and information about transfers and transport that Plaintiffs seek are highly relevant to Plaintiffs' claims, and the Court should compel Defendant to provide complete responses to Plaintiffs' Interrogatories Nos. 5, 14, and 16, and RFP Nos. 7 and 10.

### e. Information and Documents Related to the Contracts, Policies, and Procedures Governing the Facilities where Plaintiffs were Detained are Highly Relevant to Plaintiffs' Claims

Plaintiffs allege that their separation and detention, as well as the conditions and conduct they encountered while detained, violated known standards for the care and treatment of detained individuals, and minors in particular. By way of example, A.E.S.E. was held at David & Margaret in a small, windowless room, she was woken up early to clean areas of the facility, and she was not provided with appropriate food and nutrition, necessitating a trip to the emergency room the

same day that A.E.S.E. was released from Government custody. ECF No. 1 ¶¶ 90-102. Mr. Sabillon Paz and A.E.S.E. also endured substandard living conditions while in CBP custody, where they were kept in overcrowded cells maintained at freezing cold temperatures, did not receive adequate food, and lacked the ability to bathe, brush their teeth, or use hand soap. *Id.* ¶¶ 34-40. Such conditions fall short of those required by the consent decree in *Flores v. Reno*, No. CV 85-cv-4544, (C.D. Cal. July 24, 2015), ECF No. 177, which applies to minors like A.E.S.E., as well as other known detention standards like CBP's National Standards on Transport, Escort, Detention and Search, and the Performance Based National Detention Standards that ICE officers are required to follow. Compl. ¶¶ 115-131. To better understand how the Government made decisions about the conditions in which Plaintiffs were detained and the care they should have received, Plaintiffs' requests seek specific contracts, policies, and procedures, all of which are highly relevant to Plaintiffs' claims and understanding Defendant's affirmative defenses.

Defendant's responses to Plaintiffs' requests are inadequate. With respect to Interrogatory No. 20, which ask the Government to identify the persons it is claiming exercised discretion for the purposes of the discretionary function exception and the conduct over which they exercised discretion, Defendant initially responded "Defendant will supplement." Ex. 3 at 20. In its supplementation, Defendant lists only the names of HHS personnel. Ex. 6 at 22. Considering that the United States asserts "Plaintiff's [sic] claims are barred to the extent that they are based on the exercise or performance or the failure to exercise or perform a discretionary function or duty. 28 U.S.C. § 2680(a)," Answer at 35, the United States' identification of the persons it believes exercised the discretion that forms the basis of its defense to Plaintiffs' claims is plainly and highly relevant. Likewise, in response to Interrogatory No. 22, which asks the Government to identify persons who provided information contained in the Government's discovery responses or who assisted in their preparation, Defendant asserts no objections and states only: "A detailed response

will be submitted once compiled." Ex. 6 at 24. This is effectively no response at all. *See D.J. Simmons, Inc.*, 2001 WL 37125080, at *5 ("An evasive or incomplete response to a discovery request is equivalent to no response at all.").

Additional requests in this category that also suffer from incomplete responses include:

- **Interrogatory No. 18 / RFP No. 16**, which ask the Government to identify all contracts or agreements between the United States, private prison contractor Management & Training Corporation, or state or local governments, relating to the care of detainees, effective between and including January 1, 2016 to July 31, 2018, and any communications related to such contracts. Defendant responds only that ICE produced a copy of its contract with Otero County. Ex. 6 at 20; Ex. 7 at 13. Plaintiffs understand Defendant did produce this contract; however, Defendant did not produce any contract modifications or amendments, which Plaintiffs requested and understand do exist based on documents produced by Otero County. Defendant should supplement to provide a complete response. *See S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *37 (D.N.M. Aug. 9, 2012) ("As a general matter, parties cannot avoid their discovery obligations by stating that 'the discovery sought ... can be obtained from some other source.'") (alteration in original) (citation omitted). Additionally, if it is Defendant's position that no responsive communications exist, it should so state. *See C&J Equip. Mfg. Corp.*, 2023 WL 7388866, at *9.

- **Interrogatory No. 19 / RFP No. 17**, which ask the Government to identify all contracts or agreements between the United States and any private prison contractors and/or or state or local governments relating to detention conditions at El Paso facilities, effective between and including January 1, 2016 to July 31, 2018, and any communications related to such contracts. In response the Government directs Plaintiffs to ICE's contract with Otero County, which appears to be an error as this request focuses on contracts relating to El Paso detention facilities, not Otero. *See* Ex. 6 at 21; Ex. 7 at 13. Additionally, if it is Defendant's position that no responsive communications exist, it should so state. *See C&J Equip. Mfg. Corp.*, 2023 WL 7388866, at *9.

- **Interrogatory No. 21**, which asks the Government to describe any policy goals and administrative objectives it sought to achieve through any family separation policy and to identify persons with knowledge of these goals. In response, Defendant provides a generic statement about the 2018 Zero-Tolerance Policy issued by Attorney General Sessions and the Department of Homeland Security Referral Policy Memorandum signed by Secretary Nielsen, but Defendant does not identify any other individuals with knowledge of policy goals of any family separation policy. *See* Ex. 6 at 23-24. Because it is highly unlikely these are the only two persons with relevant knowledge, Defendant should supplement its response, or affirmatively represent these are the only two persons with knowledge of family separation policy goals.

- **RFP No. 18**, which requests all documents, policies, guidelines, or agreements operative between and including May 28, 2018 and July 31, 2018 that relate to the provision of food, drink, and nutrition to people detained in CBP, USMS, or ICE custody, and all related communications. In response, Defendant states: "ICE produced all documents responsive to this request. Additionally, based on a reasonable and diligent investigation, CBP has no responsive documents." Ex. 7 at 14. Defendant must be more specific in identifying the specific ICE documents it contends are responsive to this request. Defendant also ignores the USMS in its response, and so it should supplement to provide a complete response. *See Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." (citation internal quotation marks omitted)).

Contracts or agreements governing the operation of the facilities where Plaintiffs were detained are highly relevant to Plaintiffs' claims. Thus, the Court should compel Defendant to provide complete responses to Plaintiffs' Interrogatories Nos. 18, 19, 20, 21, and 22 and RFP Nos. 16, 17, and 18.

### f.   Defendant Must Produce the Previously Agreed-Upon Common Discovery

As discussed above, *see supra* at 3-4, the parties' discovery plan in this case included a 90-day disclosure period during which Defendant stipulated and agreed to produce policy-related common discovery documents that the United States had previously produced in other cases. After receiving and reviewing the common discovery, however, Plaintiffs identified several issues with the United States' productions, most of which involved questions about apparent gaps in Bates ranges and missing text files, or questions about how files were collected and the significance of different labelling conventions. Plaintiffs contemplated filing a motion to compel the missing documents and information but were able to reach an agreement with Defendant whereby Plaintiff could serve five additional interrogatories and RFPs seeking information about the common discovery in lieu of moving to compel. Plaintiffs used several of their interrogatories and RFPs accordingly, but Defendant's responses do not resolve Plaintiffs' issues.

In response to Interrogatory No. 1, which asked the Government to affirmatively represent

the complete Bates range of the common discovery, the United States initially offered only the response that "[t]he common discovery has been uploaded to the USAfx file associated with this written discovery." Ex. 6 at 3. Plaintiffs know *where* to access common discovery productions; what Plaintiffs cannot know absent the United States representing the full Bates range of common discovery is whether everything that should have been uploaded to the USAfx file sharing platform is, in fact, there. In response to Interrogatory No. 2, which asks Defendant to explain the significance of the starting Bates number and the various inconsistent Bates prefixes and suffixes that appear throughout the common discovery production, Defendant explains only that breaks in Bates ranges might appear where documents and deposition exhibits were omitted because they were specific to plaintiffs in other family separation matters. Ex. 6 at 3-4. And in response to RFP No. 3, which seeks a specific ranges of missing text files, Defendant responds only "[r]efer to Interrogatories 1 and 2," which is nonsensical given that the referenced Interrogatories do not relate to the missing text files.[10] *See* Ex. 7 at 4.

On November 29, 2023, Defendant represented that it had amended the common discovery with proper Bates numbering, that this discovery would be uploaded to USAfx, that it was providing a spreadsheet to show the amendments made, and that all this information should help resolve Interrogatories Nos. 1 and 2 and RFP No. 3. Ex. 8. However, the spreadsheet Defendant attached only refers to 15 documents out of the tens of thousands of common discovery documents, and it is unclear how, if at all, this supplementation may resolve Plaintiffs' issues with Defendant's responses to these requests until Plaintiffs are able to access the new productions on USAfx.

---

[10] Defendant has supplemented its response to Interrogatory No. 3, which seeks to understand how it collected Plaintiffs' A-Files and why they were produced with certain labels, to explain the labeling of these files, Ex. 6 at 4, but Defendant ignores the portion of the request that asks how the files were identified and whether agencies other than USCIS were contacted. While not related to the common discovery, this request seeks information Defendant should have provided during the 90-day disclosure period.

Discovery about how the policy under which Plaintiffs were separated and detained was devised, implemented, and enforced is highly relevant to all of Plaintiffs' claims against the United States. In light of this, Plaintiffs requested information that will enable them to assess the completeness of the United States' policy-level common discovery productions, as inconsistent Bates numbering and unexplained labeling conventions make it impossible for Plaintiffs to determine whether they possess all common discovery. Considering that the United States has either ignored or provided unintelligible responses to these above-mentioned requests, the Court should compel Defendant to provide complete responses to Plaintiffs' Interrogatories Nos. 1, 2, and 3 and RFP No. 3.

## II.    **Defendant's Boilerplate Objections Lack Merit**

### a.    **Defendant's Blanket Privilege Assertions are Insufficient**

Defendant asserts an objection based on privilege in response to most Plaintiffs' requests. Defendant's most common privilege objection includes the language "any applicable privilege or similar protection, including without limitation the attorney-client privilege, attorney work-product protection, the deliberative process privilege, and the law enforcement privilege." Defendant also asserts the presidential communications privilege for a subset of these responses.[11] But "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *DeSilva v. Allergan USA, Inc.*, No. 8:19-CV-01606-JLS, 2020 WL 5947827, at *2 (C.D. Cal. Sept. 1, 2020) (citation omitted). Moreover, Defendant has not produced a privilege log, and Defendant does not provide the details

---

[11] Defendant asserts the attorney-client privilege and law enforcement privilege in response to Interrogatory Nos. 6, 7, 9, 12, and 13 and RFP Nos. 11-14, and 19. Defendant asserts attorney-client privilege, attorney work-product protection, the deliberative process privilege, and the law enforcement privilege in response to Interrogatory Nos. 4 and 5 and RFP Nos. 1-6 and 8-10. Plaintiffs contest all of these privileges, as well as the presidential communications privilege in response to Interrogatory Nos. 10, 11, and 18-21 and RFP Nos. 7 and 16-18.

needed to assert privileges like the deliberative process and law enforcement privileges. *See Ctr. for Biological Diversity v. Norton*, 336 F. Supp. 2d 1155, 1159 (D.N.M. 2004) ("The deliberative process privilege is construed narrowly and…the government has the burden of demonstrating precise and certain reasons for preserving confidentiality of the materials at issue." (internal citation and quotation omitted)); *United States v. DeLeon*, 428 F. Supp. 3d 716, 769 (D.N.M. 2019) ("To assert the law enforcement privilege, the United States must state with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege.") (citation and internal quotations omitted). But even if the United States had, such privileges are not absolute. *See, e.g.*, *Mohammed v. Holder*, No. 07-CV-02697-MSK-BNB, 2014 WL 1042309, at *4 (D. Colo. Mar. 18, 2014) ("The law enforcement privilege is a qualified, not absolute, one, which means that it can be overcome by a showing that the requesting party's need for the information outweighs the law enforcement agency's need for secrecy."); *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8199308, at *3 (D. Ariz. July 21, 2016) (noting the "deliberative process privilege" is "qualified" and can be "overcome" when the need for the evidence overrides the government's interest in non-disclosure).

### b.  Defendant's Lack of Possession, Custody or Control Objections are Illogical

Defendant objects to several of Plaintiffs' requests to the extent that each "seeks information that is not within Defendant's possession, custody, or control, is not maintained in the regular course of Defendant's operations or cannot be located after a reasonable and diligent search."[12] Defendant ignores that control comprehends not only possession, "but also the right, authority, or ability to obtain the documents." *Walker v. THI of N.M. at Hobbs Ctr.*, No. CIV 09-0060 JB RLP, 2010 WL 4929069, at *5 (D.N.M. Oct. 20, 2010) (citation omitted). The United

---

[12] Defendant asserts this objection in response to 15 of Plaintiffs' Interrogatories and 16 of Plaintiffs' RFPs: Interrogatories Nos. 4-7, 9-11, 13-16, 18-21 and RFP Nos. 1-13, 16-18.

States provides no explanations as to why it does not have actual control or a legal right to obtain the requested information and documents from its own agencies and personnel. Without more, this basis for objecting to Plaintiffs' requests is improper.

### c. Defendant Cannot Object that Relevant Discovery is Obtainable from Some Other Source

Defendant contends multiple of Plaintiffs' requests are objectionable to the extent that each "seeks information that is obtainable from some other source that is more convenient, less burdensome, or less expensive, including but not limited to information Plaintiffs have or should have in their possession and information that is or will be equally available to Plaintiff."[13] But "it is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable from another source." *Fort Washington Res., Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994). Defendant cannot avoid its own discovery obligations by pointing to discovery Plaintiffs may already possess or discovery Plaintiffs may have obtained from another source. *See DuFour v. City of Las Vegas*, No. CIV. 09-0802 JB/LFG, 2010 WL 965951, at *1 (D.N.M. Jan. 28, 2010) (rejecting objection based on belief requesting party was already in possession of documents responsive to its RFPs). Defendant should not be permitted to withhold any responsive documents or information based on this objection.

### d. Defendant's Breadth, Burden, Vagueness, and Ambiguity Objections are Unsubstantiated

Defendant objects to several of Plaintiffs' requests to the extent that either the request or the relevant time period is "impermissibly overbroad" or "unduly burdensome."[14] Defendant also

---

[13] Defendant asserts a variation of this objection in response to Plaintiffs' RFPs Nos. 1-2, 7-13, and 15-18, and Plaintiffs' Interrogatories Nos. 4-11 and 15-21.

[14] Defendant asserts this objection is response to Interrogatory Nos. 4-15, 17-19, and 21 and RFP Nos. 1-6, 8-17, 20 and 21.

objects to several requests as "vague and ambiguous." These "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Heuskin v. D&E Transp., LLC*, No. CV 19-957 MV/GBW, 2020 WL 1450575, at *2 (D.N.M. Mar. 25, 2020) (citation omitted). Defendant fails to articulate the specifics of any alleged burden Plaintiffs' requests impose, nor does Defendant state with specificity why it finds a request vague or ambiguous. Without more, Defendants' objections are unsubstantiated and insufficient.

### e.   Defendant's Compound and Containing Subparts Objections are Unfounded

Defendant claims many of Plaintiffs' Interrogatories and a few of Plaintiffs' RFPs are compound and contain subparts.[15] Aside from the fact that the parties explicitly agreed Plaintiff could serve more interrogatories and RFPs than number of each allotted under the Federal Rules, *see* Clerk's Minutes, ECF No. 110, and that Plaintiffs have only used 22 out of their 30 interrogatories and 21 out of their 25 RFPs, Plaintiffs' requests do not contain subparts. Plaintiffs' requests merely provide examples of the kinds of information and documents Plaintiffs would expect to fall within the scope of their requests. Further, if the United States believed that Plaintiffs exceeded the allotted number of interrogatories, it should have objected to all interrogatories or filed a motion for protective order, as a defendant waives any such objection by opting to answer interrogatories or unilaterally selecting those to which defendant responds. *See Martinez v. Dep't of Pub. Safety*, No. CIV 11-0553 LFG/KBM, 2012 WL 13081263, at *2 (D.N.M. Feb. 15, 2012).

### CONCLUSION

For the reasons discussed above, Plaintiffs request that the Court order Defendant to (1) produce full responses to Plaintiffs' First Set of Interrogatories Nos. 1-22 and Plaintiffs' First Set of RFPs Nos. 1-3 and 5-21; and (2) provide an appropriate privilege log.

---

[15] Defendant asserts this objection is response to Interrogatory Nos. 3-7, 9, 12, 13, and 18-21 and RFP Nos. 8 and 11.

November 30, 2023

Respectfully submitted,

**By:   *Tara M. Brailey***
Zachary Manfredi*
Jessica Hanson*
Marcela Johnson*
Ming Tanigawa-Lau*
**Asylum Seeker Advocacy Project (ASAP)**
228 Park Ave. S. #84810
New York, NY 10003
(646) 937-0368
zachary.manfredi@asylumadvocacy.org
jessica.hanson@asylumadvocacy.org
marcela.johnson@asylumadvocacy.org
ming.tanigawa-lau@asylumadvocacy.org

Michael T. Mervis*
Tara M. Brailey*
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
(212) 969-3000
mmervis@proskauer.com
tbrailey@proskauer.com

Rebecca Sheff
Leon Howard
Max Isak Brooks
**ACLU of New Mexico**
P.O. Box 566
Albuquerque, NM 87103
(505) 266-5915
rsheff@aclu-nm.org
lhoward@aclu-nm.org
mbrooks@aclu-nm.org

*Attorneys for Plaintiffs*

*\*Appearing pursuant to D.N.M.LR-Civ. 83.3(a).*

## CERTIFICATE OF SERVICE

I certify that on November 30, 2023, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

By: *Tara M. Brailey*
Tara M. Brailey