IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW MEXICO

A.E.S.E., a minor child and EUSEBIO DANIEL
SABILLON PAZ, her father,

Plaintiffs,

v.                                                                    Case No. 21-569 RB/GBQ

THE UNITED STATES OF AMERICA
And MANAGEMENT & TRAINING
CORPORATION,

Defendants.

DEFENDANT UNITED STATES OF AMERICA'S RESPONSE TO
PLAINTIFFS' FIRST MOTION TO COMPEL INTERROGATORY
RESPONSES AND DOCUMENTS FROM DEFENDANT
UNITED STATES OF AMERICA

Defendant United States of America herein after ("Defendant") by and through their undersigned counsel, and for its Response to Plaintiff's Motion to Compel Answers to Interrogatory Responses and Documents, states as follows:

**Background & Procedural History:**

As of the date of this filing, Defendants have produced a staggering volume, over 300,000 pages, of documents to Plaintiffs, and it is clear Plaintiffs have not yet conducted a thorough review as evidenced by and admitted in their November 30, 2023 Motion to Compel. *See* ECF No. 156, at 11. Specifically, Defendant produced the "Common Discovery" which included approximately 59,000[1] policy-level, general discovery related to the family separation policy documents, and deposition transcripts of 15 "policy-related" witnesses from *A.P.F. v. United States,* No. 20-cv-00065-PHX (D. Ariz.) and *C.M. v. United States,* No. 19-cv-05217-PHX (D.Ariz.) as produced in other cases.[2] "Common Discovery" provides the basis for understanding the policies in place

---

[1] Approximately 220,000 pages of policy-related Common Discovery.
[2] See E.S.M. v. United States, No. 4:21-cv-000029 (D. Ariz.) ECF No. 54, at 7 ("The parties agree not to object to the use of deposition transcripts and related videos of depositions taken in the C.M. and A.P.F. actions of the following individuals or organizations on the ground that the depositions were taken in a separate action (see Fed. R.

relating to *Zero Tolerance* and the implementation and coordination of *Zero Tolerance* as it relates to the Department of Homeland Security. Defendant produced the Common Discovery to Plaintiffs on or about February 27, 2023. Due to apparent technical issues with uploading the Common Discovery, Defendant re-produced the Common Discovery to Plaintiffs on DATE (Bates range CD-US-000000001 to CD-US-0200731A) and in its supplemental responses to Plaintiffs' First Set of Interrogatories (Nos. 1-2) explained the discrepancies in the Bates Numbers as related to deposition exhibit ranges which were not part of Common Discovery as they correspond to Plaintiff specific depositions taken in *C.M.* and *AP.F.*

Since April 2023, Defendant has produced over 8,000 pages of Plaintiff specific documents from U.S. Department of Health and Human Services (HHS), U.S. Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services (USCIS), U.S. Marshals Service (USMS), and U.S. Customs and Border Protection (CBP) including, but not limited to, Plaintiffs' A-files, HHS's UAC case file, CBP's I-213, activity logs, manifests, ICE's EARM documents, and documents relating to sexual assault allegation investigations. HHS, CBP, and ICE conducted additional Plaintiff specific eDiscovery for both Plaintiffs' names and the sexual assault allegation, resulting in copious Plaintiff specific discovery. Plaintiff specific discovery produced to date includes approximately 5,872 pages from CBP, 884 from HHS, and 1,874 from ICE. Defendant provided Plaintiff with its Supplemental responses and documents on November 29, 2023 and attached hereto as Exhibit 1.[3]

Further, on December 21, 2023, Defendant produced its 3rd supplemental responses to Plaintiffs' First Set of Interrogatories and RFPs, including production of 33,780 pages of CBP's U.S. Border Patrol El Paso Sector's regional discovery. See Exhibit 2. CBP's regional discovery provides the local Sector's policies relating to *Zero Tolerance* and the implementation of *Zero Tolerance* as it relates to this case.

---

Civ. P. 32(a)(8): Matt Albence, John Bask, Michael Dougherty, Robert Guadian, Gene Hamilton, Melissa Harpert, Brian Hastings, Thomas Homan, Kevin McAleenan, Tracy Short, Tricia Swartz, Ronald Vitello, Jonathan White, and Chad Wolf, and the 30(b)(6) deposition of the United States Department of Homeland Security (by and through James McCament."); A.I.I.L. v. Sessions, No. 4:19-cv-000481 (D. Ariz.), ECF No. 110, at 7 ("As part of the MIDP process, Defendant produced to Plaintiffs the deposition transcripts of 15 'policy-related' witnesses in C.M. and A.P.F. Plaintiffs and Defendants agree not to object to the use of 'policy-related' deposition transcripts in A.I.I.L. on the ground that the deposition was taken in an earlier action.").

[3] Defendants attempted to upload the Common Discovery on November 27, 2023 however, because of the size of the file technical problems arose to which Defendant has the IT section look at and finally upload the material on December 1, 2023 and continued uploading the remainder of documents that caused the USAfx system to crash requiring more time to upload the documents. Defendant kept Plaintiff's counsel apprised of the problems and linked them in to USAfx as quickly as possible.

It is the Defendant's belief that the 2nd supplemental responses provided to Plaintiffs on November 29, 2023 and the 3rd supplemental responses provided to Plaintiffs on December 20, 2023 – except for the items addressed below in which Defendant stands by its objections for providing responses – address Plaintiffs' concerns included in their Motion to Compel. .Admittedly, Plaintiffs did not have the opportunity to review the 2nd supplemental and 3rd supplemental responses prior to filing their motion. As such, Defendant respectfully requests that the Court allow Plaintiffs adequate time to review the produced documents and responses and to confer with Defendant's on any alleged deficiencies prior to holding a hearing.[4]

**Argument:**

As noted above, Defendant asserts that its November 29, 2023 supplemental discovery responses and productions and its December 20, 2023 supplemental discovery responses and productions effectively address the majority of Plaintiffs' Motion to Compel arguments. Defendant respectfully requests the Court allow Plaintiffs' counsel adequate time to review the supplemental responses and produced documents. To assist in this review, Defendant included Bates ranges for responsive documents in its 3rd supplemental discovery responses. Once Plaintiffs' counsel has reviewed, Defendant respectfully recommends a meet and confer or, alternatively, a chance for Plaintiffs to amend their Motion to Compel to address any remaining discrepancies prior to holding a hearing on the matter. Additionally, Defendant addresses specific issues raised in the Motion to Compel below.

## I.    Plaintiffs' Arguments that Defendants' responses are insufficient are meritless under Rule 33(d)

Defendant conducted a reasonable and diligent investigation into the specific interrogatories noted in Plaintiffs' Motion to Compel (ECF No. 156, at 9-12, 19-22[5]) and provided complete responses based on its investigation. Defendant both provided Plaintiffs with a narrative

---

[4] Defendants continue to process hundreds of documents and will provide them to Plaintiff per its conversation with Plaintiffs Counsel on December 20, 2023.
[5] Plaintiffs argue insufficient responses for Interrogatory Nos.6, 8-9, 11, 15, 17-22 and RFP Nos. 2, 5, 6, 11, 13, 15-18. Defendant argues that its responses are complete and only addresses Interrogatory Nos. 9-10 and 20 as an illustrative example of the completeness of its responses.

response and referred Plaintiffs to documents by Bates number where Plaintiffs could discern additional information responsive to their interrogatories just as easily as Defendant could.  Nothing more was required.

Pursuant to Rule 33(d),

[i]f the answer to an interrogatory may be determined by examining . . . a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Courts in this District and around the country routinely uphold the use of Rule 33(d) where, as here, the burden is the same on either party to derive the requested information from the referenced documents. *See e.g., Vargas v. Norris,* 2023 WL 1070471 at *4 (D.N.M. Jan. 27, 2023) and *Wetzel v. Diestel Turk. Ranch,* No. 1:20-cv-1213 DHU/KRS, 2022 WL 16635292 at *3, 2022 U.S. Dist. LEXIS 200528 at *10 (D.N.M. Nov. 2, 2022) (Sweazea, J.) ("find[ing] that [the answering party] sufficiently complied with Rule 33 by producing the reports that reflect the information sought by [the inquiring party] because the burden would be substantially the same for either party to compile or summarize the data from the reports"—but still requiring the answering party to "provide supplemental responses" identifying "all responsive reports and any other responsive documents").

**Interrogatory Nos. 9 & 10:** These interrogatories requested information about the decisions to separate, the efforts taken to reunite Plaintiffs, and the mechanisms in place at the time of their separations that recorded their relationships. *See* Ex. 2. Defendant responded that Plaintiffs' relationships, including information about their reunifications, were recorded in various places, including their I-213s, A-files, and ORR files.  Defendant listed several such examples by Bates number.  *See id.*  Defendant further responded that the minor Plaintiffs' ORR files contain descriptions of the reunification efforts and identified such example documents by reference to the UAC Case File produced.  *See id.*  Defendant also responded that additional information responsive to the requests could be discerned from the documents Defendant had produced and

referred to specific Bates ranges applicable to each Plaintiff, as well as to the Common Discovery productions which contain policy-level information about tracking and reunification efforts. Finally, Defendant noted that its investigation remained ongoing, reserving its right to supplement its response upon learning more information. *See id.*

The level of detail Defendant provided was appropriate. After discussing this interrogatory with several representatives of various components of the federal government, including CBP, DHS, HHS/ORR, and DOJ, Defendant determined that the primary mechanism for recording Plaintiffs' relationships was to note them in specific immigration-related documents, including their I-213s and ORR files. Defendant also learned in its investigation that reunification efforts for individual Plaintiffs were sometimes described in the child Plaintiffs' ORR files, and Defendant provided that information to Plaintiffs. Finally, Defendant learned in its investigation that additional information about tracking and reunification efforts were described in the documents that Defendant had produced to Plaintiff, and so Defendant disclosed that information to Plaintiffs as well.

Also, Defendant's reference to the documents it produced was proper under Rule 33(d). Defendant referred Plaintiffs to specific Bates-number ranges of documents that contain Plaintiff-specific information. *See* Ex. 2 at 9. Defendant also referred Plaintiffs to the entirety of the Common Discovery and Plaintiff-specific discovery produced to-date. All of this was proper under Rule 33(d), because Defendant's investigation revealed that additional information about the efforts to reunite Plaintiffs and the mechanisms that recorded their relationships was present in these documents, and it would be equally burdensome for Plaintiffs to discern that information from the documents as it would be for Defendant to do so.

Finally, there is no good cause to order Defendant to provide a further response here because, in addition to the documents produced in this case, much of the information Plaintiffs demand is available in public sources. Indeed, the procedures the government used to reunify separated families have been documented at length on the public docket of the *Ms. L* litigation, *see* No. 18-cv-0428 (S.D. Cal.), and in various Office of Inspector General reports, *see, e.g.*, HHS OIG Issue Brief, *Separated Children Placed in Office of Refugee Resettlement Care* 5-12 (Jan. 2019) (describing "HHS Efforts to Identify and Reunify Separated Children"). Given the wealth of information on this topic available to Plaintiffs, there is no reason to require Defendant to provide

an additional summary of that information for Plaintiffs in its interrogatory response here, beyond the response that Defendant already provided. Plaintiffs even include reference to such public documents in their Motion to Compel. See generally, ECF No. 156 at 7-8 citing Dep't of Justice, Off. Of Inspector Gen., OIG-20-06, DHS Lacked Technology Needed to Successfully Account for Separated Migrant Families (Nov. 25, 2019) and Philip Bump, Here are the Administrative Officials Who have Said that Family Separation is Meant as a Deterrent, Wash. Post (June 19, 2018).

**Interrogatory No. 20:** This interrogatory seeks for the Defendant to identify all persons its claiming exercised discretion for the purposes of the discretionary function exception. In Defendant's 3rd supplemental responses, produced on December 20, 2023, Defendant refers Plaintiffs to the previously produced documents under Rule 33(d).

The burden Plaintiffs seek to impose on Defendant here is improper for a second reason: the specific identities of the decisionmakers are not relevant to the DFE analysis. "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Consistent with this rule, the recently filed summary-judgment motions in the Arizona litigation focused on the *nature* of the decisions at issue—such as "decisions regarding resources and staffing and assessments of the sufficiency of existing processes and systems" or "whether and when to pursue referral for prosecution of an amenable adult, and, relatedly, whether and when to deem a child traveling with an amenable adult as 'unaccompanied' within the meaning of the TVPRA"—rather than the *identities* of the decisionmakers. *See, e.g.*, Def.'s Mot. for Summary Judgment 12-13, *A.P.F. v. United States*, No. 2:19-cv-05217-SRB, ECF 371 (Mar. 9, 2023). And finally, any minimal relevance that this information might have would be outweighed by the burden on Defendant in identifying all of the individuals who exercised discretion related to the ten different categories of conduct it identified.

Plaintiffs are in no way prejudiced by Defendant's response. The pertinent facts of this case are not a mystery. Those facts have been the subject of widespread media coverage,

congressional hearings, OIG reports, and litigation. In this particular matter, Defendant has already identified in its initial disclosures and interrogatory responses dozens of individuals with knowledge related to its defenses, and Plaintiffs already have the documents from which additional individuals can be identified. In other words, Plaintiffs already have the information they need to litigate Defendant's DFE defense. Their demand for additional information here is not a good faith inquiry into necessary facts, but rather an abusive tactic to use discovery to harass Defendant and attempt to force Defendant to prepare Plaintiffs' case for them. The Court should deny the relief.

## II.    Plaintiffs' Interrogatory No. 6 and RFP No. 11 seeks premature disclosure of Defendant's affirmative defenses.

> **INTERROGATORY NO. 6**: Please describe all facts, and **identify** all **documents** and witnesses, that support the affirmative defenses **you** asserted in **your** Answer, ECF No. 62.

> **REQUEST FOR PRODUCTION NO. 11**: Produce all **documents you identified** in response to **Interrogatory No. 6**, reproduced for reference below.

> INTERROGATORY NO. 6: Please describe all facts, and **identify** all **documents** and witnesses, that support the affirmative defenses **you** asserted in **your** Answer, ECF No. 62.

Defendant asserts that Plaintiffs' requests for all documents and witnesses that support Defendant's affirmative defenses is premature as discovery is ongoing between the parties. Plaintiffs provided their responses to Defendant's discovery requests on November 27, 2023 and Defendant is still reviewing the documents produced. Additionally, Defendant, along with Plaintiffs, is working to review the over 300,000 documents produced by the Defendants to assert which documents and witnesses respond to this request and support Defendant's affirmative defenses. Defendant does not argue that such disclosures are required under Fed. R. Civ. P. 26(b)(1) and Defendant will supplement prior to the end of fact discovery to include all supporting documents and witnesses.

## III.   Plaintiffs' Interrogatory No. 13 and RFP No. 21 are overburdensome, not narrowly tailored to result in relevant discovery, and violate agents' privacy interests

**INTERROGATORY NO. 13**: For each CBP officer, Border Patrol agent, or other adult person who was physically present at the El Paso Station at any time between and including June 2 and June 3, 2018, please **identify** the person, describe the date and nature of any background checks the **United States** conducted on the person, and list any disciplinary or criminal history the person's background check revealed relating to sexual misconduct, or to any abuse or misconduct against children. For each person **identified**, if the **United States** did not conduct any background checks on the person, please so state.

**REQUEST FOR PRODUCTION NO. 21**: Please produce all **documents** containing photographs and/or physical descriptions of all **United States personnel** or other non-detained adults present at the Ysleta Border Patrol Station and the El Paso Border Patrol Station on any date between and including May 28, 2018 and June 3, 2018.

Interrogatory No. 13 seeks the background checks, disciplinary, or criminal history, on all CBP officers, Border Patrol agents, or other adult persons who were physically present at the El Paso Station during June 2-3, 2018. As noted in the 2nd supplemental discovery responses, CBP does not maintain records of who was physically present at the stations and relies on duty rosters to provide a list of processing and transportation agents to show which employees should have been present on specific dates. See Ex. 1, at 16 and 17. While Plaintiffs argue that the provision of this information relates to the sexual assault allegation, this request is not reasonably tailored to provide relevant information. Specifically, as noted in the Complaint, Plaintiffs claim that a woman was the alleged perpetrator of the alleged sexual abuse. Compl. ¶¶ 82-83. However, Plaintiffs' request is not narrowed to just female agents. As documented in Defendant's 3rd supplemental response to Interrogatory No. 13, only one female agent was on duty on June 2-3, 2018. See Ex. 2, at 17. Requiring Defendant to produce criminal background checks for all agents (approximately 229 agents on duty at Ysleta and El Paso stations for May 28-June 3, 2018) and other adults present is overly burdensome and not tailored to produce relevant information.

Request for Production No. 21 seeks production of all documents containing photographs or physical descriptions of all U.S. personnel or other non-detained adults present at Ysleta Border

Patrol Station and El Paso Border Patrol Station between May 28, 2018 and June 3, 2018. This information is not relevant to this case. Plaintiffs did not bring a *Bivens* case alleging that individual federal agents deviated from policy and violated their rights; rather, Plaintiffs expressly alleged that they were separated "pursuant to" a specific nationwide policy. *E.g.*, Compl. ¶¶20-27, 42,46,103-140.  There is no claim that any of the agents involved in Plaintiffs' separations did anything other than follow that policy, nor have Plaintiffs presented any factual basis to pursue this discovery. This is a fishing expedition and attempt to divert attention from the facts of the matter before the Court. Defendant respectfully requests that the Plaintiffs demonstrate the need for this information so that Defendant may adequately consider and defend production, as needed.

Even if Plaintiffs narrowed their reasoning for needing this information to the sexual assault allegation, the request is overbroad given the allegations contained in the Complaint. See Compl. ¶¶82-83. Defendant alternatively argues that this request should be narrowed to the one female agent on duty at El Paso Station on June 2-3, 2018 as noted in the 3rd supplemental Interrogatory No. 13 response. See Ex. 2, at 20. Defendant CBP contends, as noted in the CBP OPR report first produced without redactions on April 5, 2023, that its investigation into the sexual abuse allegations were found to be unsubstantiated as the description provided by the minor Plaintiff in her forensic interview conducted on August 1, 2019 at the Child Assessment Center, Columbus, Ohio failed to describe a Border Patrol Agent and referred the matter for further investigation to HHS. Specifically, the minor Plaintiff described the alleged perpetrator as being an older female with greyish hair, a little fat, and wearing a dress with squares on it. Border Patrol Agents are required to be in their green uniform (shirt and pants, no dresses or skirts allowed) while on duty. As the Plaintiffs' description of the alleged perpetrator plainly fails to reference an on-duty Border Patrol Agent, Defendant argues that no nexus between their request and their allegations exists requiring production.

Further, the agents' privacy interests weigh against granting this discovery here. The Court should not condone the intrusive examination of federal agents' background checks, employment records, photos or physical descriptions absent some connection to the actual claims and defenses in this case. There can be no connection between the request for all persons present when Plaintiffs' Complaint alleges that a female agent was the alleged perpetrator.

IV.     **Plaintiffs' RFP No. 19 seeks law enforcement privileged information**

**REQUEST FOR PRODUCTION NO. 19**: Please produce a map of the El Paso Border Patrol Station's **premises** as it existed between and including June 1, 2018 and June 3, 2018, including **documents** sufficient to show the location of all shower facilities used to shower detainees and all audio or video surveillance recording devices on the **premises**. If the El Paso Border Patrol Station's **premises** have changed between June 3, 2018 and the present, please produce maps and/or **documents** sufficient to show any such changes and an accurate reflection of the current **premises**.

To assert the law enforcement privilege, the United States must state "with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *United States v. Winner*, 641 F.2d 825, 831. Furthermore, "[t]he party claiming the privilege bears the burden of showing the privilege applies." *United States v. Ramos-Burciaga*, 2018 WL 5314922, at *5 (D.N.M. Oct. 26, 2018) (Johnson, J.). Although the Tenth Circuit has not precisely outlined the scope of the law enforcement privilege, in *In re City of New York*, the Second Circuit determined that the law enforcement privilege applies to: (i) "law enforcement techniques and procedures"; (ii) "information that would undermine the confidentiality of sources"; (iii) "information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation"; and (iv) "information that would otherwise interfere with an investigation." Moreover, according to the Second Circuit, when the law enforcement privilege applies, there ought to be a pretty strong presumption against lifting the privilege.'" *In re City of New York*, 607 F.3d at 945 (quoting *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997)).

The provision of maps from 2018 and current maps noting any changes to the physical layout of a U.S. Border Patrol Station would endanger law enforcement personnel, building security, and privacy of any migrant or individual being held for criminal violations as such maps would demonstrate the location of audio and/or video cameras, exits, and secure rooms including but not limited to secure holding rooms, property storage rooms, and armory rooms. Production of such a map in a civil litigation, even with a protective order in place, would jeopardize the mission of the U.S. Border Patrol, its law enforcement personnel, and its building security. Further, production of such maps could reasonably result in the maps falling into the hands of criminal organizations significantly eroding the U.S. Border Patrol's ability to protect its law enforcement personnel and the persons being held at the facility.

Alternatively, Plaintiffs, presumably, are seeking such maps for the sexual assault allegation,[6] however, a map of the station does not provide evidence to support their claims as CBP has previously stated in their 2nd and 3rd supplemental discovery responses that it has no audio or video recordings and that to the best of its knowledge, no contractors have such recordings. The location of audio or video equipment therefore is unnecessary and bears no nexus to Plaintiffs' causes of action.

## V. Plaintiffs' discovery requests for information not in the possession of Defendant (Interrogatory Nos. 15, 16, 18, 19 and RFP Nos. 7, 16, 17,18)

A party cannot be compelled to produce documents that do not exist or that are not in that party's possession, custody, or control. Fed. R. Civ. P. Rule 34, *see also Manning v. General Motors,* 247 F.R.D. 646, 652 (U.S. District Court, D. Kansas). Several of Plaintiffs' discovery requests seek documents that are not in the possession, custody, or control of Defendant. Specifically, Defendant has provided the one contract between ICE and Otero County. Ex. 2, at 21-22. MTC also produced their contract to Plaintiffs previously. Defendant does not have contracts with MTC, a private organization, or El Paso County Detention Facility, a local facility governed by the local government. See Ex. 2, at 21-22. For example, MTC, co-Defendant in this matter housed Mr. Paz and provided medical treatment to him. Those documents are in the possession of MTC and not the Federal Defendant. Various medical providers in the El Paso County detention center as well as the Otero County Detention Centers were the medical providers and independent contractors; the Federal Defendant is not in control of them or their systems of records. Plaintiffs are free to subpoena those records from them as they are the repository for the records and not the Federal Defendants. To the extent that Plaintiffs are seeking documents from organizations outside Defendant's control, Plaintiffs are in the same position as Defendant to propound discovery or issue subpoenas for their information. Defendant does not control private organizations and/or local governments.

---

[6] Presumably under the assault and battery claims. According to the Restatement (Second) of Torts, the elements of civil battery are as follows:
(a) [an] act[ ] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
(b) an offensive contact with the person of the other directly or indirectly results.
Restatement (Second) of Torts § 18. For assault, the actor need only intend to cause another to be put in imminent apprehension of harmful or offensive contact, but the contact need not occur. Restatement (Second) of Torts § 21 (Am. L. Inst. 1965) (defining assault)

**Conclusion:**

Defendant objects to oral argument at this time.  Defendant would ask the Court to allow Plaintiffs time to review the supplementation and the documents submitted in response to their Request For Production of Documents and to either respond to the supplementation or to amend the present Motion to Compel as many if not all of Plaintiffs objections should be addressed. Any remaining issues should be briefed allowing Defendant adequate time to respond to any new issues.

WHEREFORE for the foregoing reasons, Plaintiffs' motion to compel should be denied.

Respectfully Submitted,
ALEXANDER M.M. UBALLEZ

United States Attorney

*__Electronically filed 12/211/23__*
MANUEL LUCERO
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274
Manny.Lucero@usdoj.gov
*Attorneys for Defendant*